**UNITED STATES BANKRUPTCY COURT**
**Northern District of California**

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No.: 21-51127 MEH |
| | ) | R.S. No.: GB-1 |
| Monterey Mountain Property | ) | |
| Management, LLC | ) | Hearing Date: January 7, 2022 |
| | ) | Time: 10:00 AM |
| Debtor(s) | ) | |
| _____ | ) | |

**Relief From Stay Cover Sheet**

Instructions: Complete caption and Section A for all motions. Complete Section B for mobile homes, motor vehicles, and personal property. Complete Section C for real property. Utilize Section C as necessary. If moving party is not a secured creditor, briefly summarize the nature of the motion in Section D.

(A)　　Date Petition Filed: _____08/25/2021_____Chapter: 13
　　　　Prior hearings on this obligation: _____Last Day to File §523/§727 Complaints: ___

(B)　　Description of personal property collateral (e.g. 1983 Ford Taurus):

　　　　Secured Creditor　[ 　]　or lessor [ 　]
　　　　Fair market value: $_____　Source of value: _____
　　　　Contract Balance: $_____　Pre-Petition Default: $_____
　　　　Monthly Payment: $_____　　　No. of months: _____
　　　　Insurance Advance: $_____　Post-Petition Default: $_____
　　　　　　　　　　　　　　　　　　　　　　No. of months: _____

(C)　　Description of real property collateral (e.g. Single family residence, Oakland, CA): 19024 Fieldstone Court, Salinas, CA 93908

　　　　Fair market value: $_1,288,600.00_　Source of value: _debtor's schedules_　If appraisal, date: _____

　　　　Moving Party's position (first trust deed, second, abstract, etc.): 1st deed of trust

　　　　Approx. Bal. $_____1,115,774.17_____　Pre-Petition Default: $_347,399.93_____
　　　　As of (date): _____11/11/2021_____　　No. of months: __76___
　　　　Mo. payment: $____4,245.89_____　Post-Petition Default: $_13,277.25_____
　　　　Notice of Default (date): _____　　No. of months: _3_____
　　　　Notice of Trustee's Sale: _____　Advances Senior Liens: $_____

　　　　Specify name and status of other liens and encumbrances, if known (e.g. trust deeds, tax liens, etc.):

| Position | Amount | Mo. Payment | Defaults |
|---|---|---|---|
| 1st Trust Deed:_movant_____ | $1,115,774.17 | $ 4,425.89 | $ 360,677.18 |
| 2nd Trust Deed: ____ | | $ | $ |
| _____: | | | |
| _____: | | | |
| _____: | | | |
| (Total) | $,115,774.17 | $4,425.89 | $360,677.18 |

Dated:　November 30, 2021

　　　　　　　　　　　　　　　　　　　　　　　/s/ Erica Loftis
　　　　　　　　　　　　　　　　　　　　　　　Signature

　　　　　　　　　　　　　　　　　　　　　　　Erica Loftis
　　　　　　　　　　　　　　　　　　　　　　　Print or Type Name

Attorney for <u>Secured Creditor</u>

Erica Loftis, Esq. (SBN 259286)
Adam P. Thursby, Esq. (SBN 318465)
GHIDOTTI BERGER LLP
1920 Old Tustin Ave
Santa Ana, CA 92705
Ph: (949) 427-2010
Fax: (949) 427-2732
bknotifications@ghidottilaw.com

Attorney for Secured Creditor
U.S. Bank Trust National Association as Trustee of Bungalow Series III Trust

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| In Re: | CASE NO.: 21-51127-MEH |
| Monterey Mountain Property Management, LLC, | CHAPTER 11 |
| Debtor. | RS No.: GB-1 |
| | **MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Date: January 7, 2022 Time: 10:00 AM Place: Hearing will be conducted via telephone/video conferencing |
| | Judge: Hon. M. Elaine Hammond |

TO ALL PARTIES IN INTEREST AND TO THEIR ATTORNEYS OF RECORD:

COMES NOW, Movant, U.S. Bank Trust National Association as Trustee of Bungalow Series III Trust, ("Movant") moves this Court for an Order Terminating the Automatic Stay of 11 U.S.C. §362 as to moving party (and the Trustee under the Deed of Trust securing moving party's claim) so that moving party and its Trustee may commence and continue all acts

necessary to foreclose under the Deed of Trust secured by Debtor's property, commonly known as 19024 Fieldstone Court, Salinas, CA 93908, ("Property" herein).

Movant submits the following Memorandum of Points and Authorities in support of its Motion for Relief From Stay.

## STATEMENT OF FACTS

The subject real securing the Deed of Trust loan is commonly known as 19024 Fieldstone Court, Salinas, CA 93908 ("Property") and legally described as set forth therein. A true and correct copy of the Deed of Trust is attached to the Motion as Exhibit "1".

Movant is the holder and in physical possession of the original Promissory Note dated May 9, 2007 in the original principal amount of $776,000.00 executed by Borrowers, Brenda Noble and Michael T. Noble, which is secured by the Deed of Trust of the same date. A true and correct copy of the Note is attached to the Motion as Exhibit "2".

The Deed of Trust was assigned to Movant. True and correct copies of the Assignments of Deed of Trust are attached collectively to the Motion as Exhibit "3".

The Debtor, Monterey Mountain Property Management LLC ("Debtor") filed a Chapter 11 bankruptcy petition on August 25, 2021. This is the second filing purporting to affect this property. A prior Chapter 11 petition was filed on March 28, 2016 by Mountain Investments LLC as case 16-50906. While Michael Noble is the responsible individual for both filings, it is unknown to Movant if respective debtors are the same entities.

Movant became aware of a Quitclaim Deed recorded on December 10, 2014, purporting to transfer interest from Brenda Noble to Dr. Michael T. Noble & Mountain Investments. Movant became aware of a second Quitclaim Deed recorded on January 25, 2021, purporting to transfer interest from Michael T. Noble to Monterey Mtn Property Management, LLC. True and correct copies of these Quitclaim Deeds are attached to the Motion as Exhibits "4" and "5," respectively. Neither of these deeds were executed with the knowledge or consent of Movant.

With respect to Movant's Deed of Trust as of November 10, 2021, the following payments are contractually due:

| | | |
|---|---|---|
| 6 Payments (*May 2015 – Oct 2015*) | at $1,858.13 | $ 11,148.78 |
| 12 Payments (*Nov 2015 – Oct 2016*) | at $2,111.21 | $ 25,334.52 |
| 12 Payments (*Nov 2016 – Oct 2017*) | at $2,533.82 | $ 30,405.84 |
| 12 Payments (*Nov 2017 – Oct 2018*) | at $2,702.74 | $ 32,432.88 |
| 12 Payments (*Nov 2018 – Oct 2019*) | at $4,502.15 | $ 54,025.80 |
| 12 Payments (*Nov 2019 – Oct 2020*) | at $4,032.54 | $ 48,390.48 |
| 10 Payments (*Nov 2020 – Aug 2021*) | at $3,452.17 | $ 34,521.70 |
| 2 Payments (*Sept 2021 – Oct 2021*) | at $4,343.07 | $  8,686.14 |
| 1 Payments (*Nov 2021*) | at $4,245.89 | $  4,245.89 |
| Escrow Deficiency | | $ 68,443.20 |
| Projected Escrow Shortage | | $  5,345.20 |
| Attorney's Fees | | $  1,299.14 |
| Foreclosure Expenses | | $  6,825.11 |
| Prior Servicer Corporate Advances | | $  9,175.28 |
| NSF Fees | | $     25.00 |
| Late Charges | | $    345.22 |
| Bankruptcy Attorney Fee: | | $  1,050.00 |
| Bankruptcy Filing Fee: | | $    188.00 |
| **Total Delinquency:** | | **$ 361,915.18** |

The next scheduled monthly payment of $4,245.89 is due December 1, 2021 and continuing each month thereafter.  This amount may be subject to change pursuant to the terms of the applicable loan documents.  Late charges will accrue if the payments are not received by the 15h of the month.  As of November 10, 2021, the total unpaid balance of the loan is $1,115,774.17.

Within Debtor's Schedule A, Debtor claims to hold an ownership interest in the Property and values the Property at $1,288,600.00.  A true and correct copy of Debtor's Schedule A is attached to the Motion as Exhibit "5".  Movant remains the only lien holder, as evidenced by Debtor's Schedule D.  Attached hereto as Exhibit "6" is a copy of Schedule D-Creditors Holding Secured Claims of the Debtor's Schedules.

## DISCUSSION

Pursuant to 11 U.S.C. §362(d)(1), Movant is entitled to relief from the automatic stay to enforce its lien for cause, including lack of adequate protection of any interest in the Property. Movant alleges that post-petition payments are in arrears.

Movant submits that cause exists to grant relief under *Section 362(d)(1)*. Bankruptcy Code *Section 362(d)(1)* provides that a party may seek relief from stay based upon "cause,"

including lack of adequate protection. Adequate protection can be offered in the form of cash or periodic payments or the existence of a sufficient equity cushion.

Movant submits that adequate protection in this case requires normal and periodic cash payments to Movant, as called for by the Note. The Debtor is delinquent on payments to Movant. A continuing failure to maintain required regular payments has been held, in and of itself, to constitute sufficient cause for granting a motion to modify the stay. *(In re Trident Corp.*, 19 BR 956,958 (Bankr. E.D. Pa. 1982), aff'd 22 BR 491 (Bankr. E.D. Pa. 1982 (citing *In re Hinkle*, 14 BR 202, 204 (Bankr. E.D. Pa. 1981); see also *In re Jones*, 189 BR 13, 15 (Bank. E.D. Okla 1995) (citing *Hinkle*, 14 BR at 204)). The Debtor's failure to tender regular ongoing monthly mortgage payments is sufficient cause to terminate the automatic stay.

Movant further submits that Debtor's failure to make payments for an extended period of time constitutes "cause" pursuant to 11 U.S.C. §362d(1). In *In re Three Tuns*, the court held, "…the mortgagee is entitled to relief from stay under [§362(d)(1)] "for cause" because of the fact that the debtors are more than two years in arrears on the mortgage." *In re Three Tuns, Inc.*, 35 B.R. 110 (Bankr. E.D. Pa. 1983). The court further noted that:

> "although the Code was intended to afford financially troubled debtors a breathing spell from their creditors, it was not Congress's intent to allow debtors to remain in their homes while failing to pay the current mortgage payments for over two years. Such is an abuse of the protection given by the Code and is sufficient "cause" to modify the stay pursuant to §362(d)(1)."
>
> *Id.*

Here, the loan remains due for the May 2015 monthly mortgage payment to present.

Furthermore, there is an insufficient equity cushion to protect Movant's security interest. Debtor values the property at $1,288,600.00. Considering Movant's lien is currently at $1,115,774.17, there remains an equity cushion of only 13.4%.

## **CONCLUSION**

Based on the foregoing, Movant alleges that it is not adequately protected and that "cause" exists based on Debtor's failure to make payments for an extended period of time. Movant is not receiving regular monthly payments and is unfairly delayed from proceeding with foreclosure of the Property. Accordingly, relief from the automatic stay should be granted to

Movant pursuant to 11 U.S.C. §362(d)(1).

WHEREFORE, Movant prays for judgment as follows:

1. For an Order granting relief form the automatic stay, permitting Movant to proceed with the foreclosure under Movant's Deed of Trust, and to sell the Property at a trustee's sale under the terms of the Deed of Trust to proceed with any and all post foreclosure sale remedies, including the unlawful detainer action or any other action necessary to obtain possession of the Property.

2. For an Order that the fourteen day stay described by Bankruptcy Rule 4001(a)(3) be waived.

3. For attorneys' fees and costs incurred herein.

4. For such other relief as the Court deems proper.

Dated: November 30, 2021       GHIDOTTI | BERGER LLP

_/s/ Erica Loftis Pacheco_
Erica Loftis Pacheco, Esq.
Counsel for U.S. Bank Trust National Association
as Trustee of Bungalow Series III Trust

Erica Loftis, Esq. (SBN 259286)
Adam P. Thursby, Esq. (SBN 318465)
GHIDOTTI BERGER
1920 Old Tustin Ave
Santa Ana, CA 92705
Ph: (949) 427-2010
Fax: (949) 427-2732
bknotifications@ghidottiberger.com

Attorney for Secured Creditor
U.S. Bank Trust National Association as Trustee of Bungalow Series III Trust

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In Re: | CASE NO.: 21-51127 MEH |
| Monterey Mountain Property Management, LLC, | CHAPTER 11 |
| Debtor. | RS No.: GB-1 |
| | **DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY** |
| | Judge: M. Elaine Hammond |

I, Jody Lee, declare and state as follows:

1.      I am over the age of eighteen years and not a party to this action. The facts set for the below are known to me personally based upon the review of the business records and I have first-hand knowledge of them. If called as a witness, I could and would testify competently under oath to such facts.

2.      I am employed by SN Servicing Corporation, which services the subject loan on behalf of U.S. Bank Trust National Association as Trustee of Bungalow Series III Trust ("Secured Creditor" herein).

3.      I am familiar with the manner and procedure by which the records of Secured Creditor are obtained, prepared, and maintained. Those records are obtained, prepared, and maintained by employees or agents of Secured Creditor in the performance of their regular business duties at or near the time, act, conditions, or events recorded thereon. The records are made either by persons with knowledge of the matters they record or from information obtained by person with such knowledge. It is my business practice to maintain these records in the regular course of business.

4.      Secured Creditor has been responsible for the handling of all matters relative to the underlying loan prior to the filing of the within motion, including but not limited to processing of all payments received, crediting of received payments, adding all proper charges to the loan, confirming the maintenance of hazard insurance and property taxes, property preservation where appropriate, communicating with and responding to the borrower on all matters relative to the loan, and the commencement of non-judicial foreclosure proceedings where appropriate. All activities on the loan advanced by Secured Creditor were advanced in accordance with the terms of the Note, Deed of Trust, and Forbearance/Modification Change of Terms Agreement.

5.      The subject real property securing the Deed of Trust loan is commonly known as 19024 Fieldstone Court, Salinas, CA 93908, and legally described as set forth therein. A true and correct copy of the Deed of Trust is attached as **Exhibit "1"**.

6.      Furthermore, Secured Creditor is the holder and in possession of the original Promissory Note dated May 9, 2007 in the principal amount of $776,000.00 which is secured by the Deed of Trust of the same date. A true and correct copy of the Note is attached as **Exhibit "2"**.

1  7.  True and correct copies of all assignments are attached as **Exhibit "3"**.

2  8.  The Debtor filed this subject bankruptcy petition August 25, 2021.

3  9.  Movant became aware of a Quitclaim Deed recorded on December 10, 2014,

4 purporting to transfer interest from Brenda Noble to Dr. Michael T. Noble & Mountain

5 Investments. Movant became aware of a second Quitclaim Deed recorded on January 25,

6 2021, purporting to transfer interest from Michael T. Noble to Monterey Mtn Property

7 Management, LLC. True and correct copies of these Quitclaim Deeds are attached to the

8 Motion as **Exhibits "4" and "5,"** respectively. Neither of these deeds were executed with the

9 knowledge or consent of Movant.

10  10.  With respect to Secured Creditor's Deed of Trust as of November 10, 2021, the

11 following is now due:

| | | |
|---|---|---|
| 6 Payments (*May 2015 – Oct 2015*) | at $1,858.13 | $ 11,148.78 |
| 12 Payments (*Nov 2015 – Oct 2016*) | at $2,111.21 | $ 25,334.52 |
| 12 Payments (*Nov 2016 – Oct 2017*) | at $2,533.82 | $ 30,405.84 |
| 12 Payments (*Nov 2017 – Oct 2018*) | at $2,702.74 | $ 32,432.88 |
| 12 Payments (*Nov 2018 – Oct 2019*) | at $4,502.15 | $ 54,025.80 |
| 12 Payments (*Nov 2019 – Oct 2020*) | at $4,032.54 | $ 48,390.48 |
| 10 Payments (*Nov 2020 – Aug 2021*) | at $3,452.17 | $ 34,521.70 |
| 2 Payments (*Sept 2021 – Oct 2021*) | at $4,343.07 | $  8,686.14 |
| 1 Payments (*Nov 2021*) | at $4,245.89 | $  4,245.89 |
| Escrow Deficiency | | $ 68,443.20 |
| Projected Escrow Shortage | | $  5,345.20 |
| Attorney's Fees | | $  1,299.14 |
| Foreclosure Expenses | | $  6,825.11 |
| Prior Servicer Corporate Advances | | $  9,175.28 |
| NSF Fees | | $     25.00 |
| Late Charges | | $    345.22 |
| Bankruptcy Attorney Fee: | | $  1,050.00 |
| Bankruptcy Filing Fee: | | $    188.00 |
| **Total Delinquency:** | | **$ 361,915.18** |

11.  The loan remains due for the May 2015 monthly mortgage payment to present.
The next scheduled monthly payments of $4,245.89 is due December 1, 2021, and continuing
each month thereafter. However, this amount may be subject to change pursuant to the terms
of the applicable loan documents. Late charges will accrue if the payments are not received by

Motion for Relief Declaration

1   the 15th of the month.

2       12.     As of November 10, 2021, the total unpaid balance of the loan is $1,115,774.17.

3

4       I declare under penalty of perjury under the laws of the United States of America that

5   the foregoing is true and correct.

6

7   Executed on 11/30/21 _at Eureka, CA

8

9

10                                          _____
                                            Signature
11

12

13                                          _____
                                            Print Name
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "1"

FIDELITY NATIONAL TITLE

Stephen L. Vagnini     RANJELIQUE
Monterey County Recorder    5/24/2007
Recorded at the request of    11:33:43
**Filer**

Return to:
A E G I S   W H O L E S A L E
CORPORATION
ATTENTION: LOAN SHIPPING
3010 BRIARPARK DRIVE, #700
HOUSTON, TX 77042

DOCUMENT: **2007041846** | Titles: 1/ Pages: 22



Fees ...    71.00
Taxes...
Other...
AMT PAID   $71.00

Loan No: ██████████    [Space Above This Line For Recording Data] ————————

Borrower: BRENDA NOBLE      Data ID: 569

# DEED OF TRUST    MIN: ████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated May 9, 2007, together with all Riders to this document.

**(B) "Borrower"** IS BRENDA NOBLE AND MICHAEL T. NOBLE , WIFE AND HUSBAND, AS JOINT TENANTS . Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is AEGIS WHOLESALE CORPORATION. Lender is A CORPORATION organized and existing under the laws of the State of DELAWARE. Lender's address is 3010 BRIARPARK DRIVE, SUITE 700, HOUSTON, TEXAS 77042.

**(D) "Trustee"** is COMMONWEALTH LAND TITLE.

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**CALIFORNIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
     Form 3005   1/01     *(Page 1 of 16 Pages)*

(F) **"Note"** means the promissory note signed by Borrower and dated May 9, 2007. The Note states that Borrower owes Lender **SEVEN HUNDRED SEVENTY-SIX THOUSAND and NO/100-----Dollars** (U.S. $ 776,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **June 1, 2037.**

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | |
| ☐ 1–4 Family Rider | ☐ Biweekly Payment Rider | |
| ☐ Other(s) [specify] | | |

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**CALIFORNIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3005   1/01        *(Page 2 of 16 Pages)*

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of MONTEREY:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which currently has the address of 19024 FIELDSTONE COURT,
                                                    [Street]

SALINAS, CALIFORNIA                              93908          ("Property Address"):
[City]                                                  [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**CALIFORNIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
                              **Form 3005   1/01**          *(Page 3 of 16 Pages)*

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**CALIFORNIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

**Form 3005   1/01**      *(Page 4 of 16 Pages)*

Case: 21-51127    Doc# 33    Filed: 11/30/21    Entered: 11/30/21 14:53:40    Page 16 of 89

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**CALIFORNIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Form 3005    1/01**        *(Page 5 of 16 Pages)*

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Case: 21-51127    Doc# 33    Filed: 11/30/21    Entered: 11/30/21 14:53:40    Page 18 of 89

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**CALIFORNIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
                                        Form 3005   1/01          *(Page 7 of 16 Pages)*

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Case: 21-51127    Doc# 33    Filed: 11/30/21    Entered: 11/30/21 14:53:40    Page 20 of 89

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a)** Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**CALIFORNIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**CALIFORNIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Case: 21-51127    Doc# 33    Filed: 11/30/21    Entered: 11/30/21 14:53:40    Page 22 of 89

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**CALIFORNIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Form 3005   1/01      <em>(Page 11 of 16 Pages)</em>

Case: 21-51127   Doc# 33   Filed: 11/30/21   Entered: 11/30/21 14:53:40   Page 23 of 89

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**CALIFORNIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Form 3005   1/01      *(Page 12 of 16 Pages)*

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**CALIFORNIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

**Form 3005   1/01**      *(Page 13 of 16 Pages)*

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

Case: 21-51127   Doc# 33   Filed: 11/30/21   Entered: 11/30/21 14:53:40   Page 26 of 89

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**CALIFORNIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Form 3005    1/01          *(Page 15 of 16 Pages)*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Brenda Noble_ (Seal)
BRENDA NOBLE —Borrower

_Michael Noble_ (Seal)
MICHAEL T. NOBLE —Borrower

—————————— [Space Below This Line For Acknowledgment] ——————————

State of CALIFORNIA
County of MONTEREY

§
§

On May 11, 2007, before me, Cathy Glazebrook, a Notary Public, personally appeared
BRENDA NOBLE AND MICHAEL T. NOBLE

☐ personally known to me
OR
☑ proved to me on the basis of satisfactory evidence

to be the persons whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacities, and that by their signatures on the instrument the persons, or the entity upon behalf of which the persons acted, executed the instrument.

WITNESS my hand and official seal.

_Cathy Glazebrook_
Notary Public

_Cathy Glazebrook_
(Printed Name)

[Seal]

My commission expires: 8/21/08


CATHY GLAZEBROOK
COMM. # 1508071
Notary Public-California
County of Monterey
My Comm. Exp. Aug 21, 2008
VRS2

**CALIFORNIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3005   1/01        *(Page 16 of 16 Pages)*

# ADJUSTABLE RATE RIDER
### (MTA-Twelve Month Average Index - Payment Caps)

THIS ADJUSTABLE RATE RIDER is made this 9th day of May, 2007, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to AEGIS WHOLESALE CORPORATION ("Lender") of the same date and covering the property described in the Security Instrument and located at:

19024 FIELDSTONE COURT
SALINAS, CALIFORNIA  93908
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT.  THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE.  THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS.**  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agrees as follows:

**A.     INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and the monthly payments, as follows:

**2.     INTEREST**

**(A)  Interest Rate**
Interest will be charged on unpaid Principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of **1.5000%**.  The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of the Note.

**(B)  Interest Rate Change Dates**
The interest rate I will pay may change on the first day of **July, 2007**, and on that day every month thereafter.  Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.  The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**PayOption MTA ARM Rider
FE-5315 (0511)**

*(Page 1 of 5 Pages)*

**(C) Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding **THREE and 575/1000** percentage point(s) (**3.575 %**) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than **9.9500%**. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

3. **PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the first day of each month beginning on **July 1, 2007**. I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **June 1, 2037**, I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 422039, HOUSTON, TX 77242-4239, or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ **2,678.13** unless adjusted under Section 3(F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the first day of **July, 2008**, and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

Case: 21-51127    Doc# 33    Filed: 11/30/21    Entered: 11/30/21 14:53:40    Page 30 of 89

**(D) Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment". Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent (115%) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the tenth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

PayOption MTA ARM Rider
FE-5315 (0511)

Case: 21-51127    Doc# 33    Filed: 11/30/21    Entered: 11/30/21 14:53:40    Page 31 of 89

**(H) Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are **greater** than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Case: 21-51127    Doc# 33    Filed: 11/30/21    Entered: 11/30/21 14:53:40    Page 32 of 89

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

........................................................... *Brenda Noble* ...............(Seal)
BRENDA NOBLE —Borrower

........................................................... *Michael T. Noble* ...............(Seal)
MICHAEL T. NOBLE —Borrower

**PayOption MTA ARM Rider**
**FE-5315 (0511)**

*(Page 5 of 5 Pages)*

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF Salinas, COUNTY OF Monterey, STATE OF California AND IS DESCRIBED AS FOLLOWS:

PARCEL I:

Lot 57, as said Lot is shown and designated on that map entitled, "Tract No. 1283, Las Palmas Ranch, Phase II, Unit VI", filed for record September 29, 1997 in Volume 19, Cities and Towns, at Page 47, Monterey County Records, as amended by a Certificate of Correction Recorded October 13, 1999 in Series Number 9976738 and also amended by a Certificate of Correction Recorded January 14, 2000 in Series Number 2000003082.

PARCEL II:

A non-exclusive easement on, over, under and across the "Master Common Area" as defined in the Master Declaration of Covenants, Conditions and Restrictions for Las Palmas Ranch No. 2, recorded September 26, 1995 in Reel 3279, Page 1412, Official Records of Monterey County, California, as amended and restated by document recorded December 27, 1995, in Reel 3316, Page 1339, Official Records of Monterey County, California ("Master Declaration"), for the purposes described in the Master Declaration and subject to the terms, provisions and reservations of the Master Declaration. This Easement is appurtenant to Parcel I above and shall become effective as to each Lot within the Master Common Area upon the later to occur of (i) the recordation of this Deed or (ii) the conveyance of record of the lot within the Master Common Area to the Master Association.

PARCEL III:

A non-exclusive easement, on, over, under and across the "Common Area" as defined in the Declaration of Covenants, Conditions and Restrictions for Fieldcrest atLas Palmas Ranch, recorded September 26, 1995, in Reel 3279, Page 1447, Official Records of Monterey County, California ("Fieldcrest Declaration"), for the purposes described in the Fieldcrest Declaration and subject to the terms, provisions and reservations of the Fieldcrest Declaration. This Easement is appurtenant to Parcel I above and shall become effective as to each Lot within the Common Area upon the later to occur of (i) the recordation of this Deed or (ii) the conveyance of record of the Lot within the Common Area to the Association.

Assessor's Parcel No: 139-392-018-000

**END OF DOCUMENT**

# EXHIBIT "2"

# ADJUSTABLE RATE NOTE
### (MTA-Twelve Month Average Index—Payment Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

May 9, 2007          SALINAS          CALIFORNIA
[Date]             [City]              [State]

19024 FIELDSTONE COURT
SALINAS, CALIFORNIA 93908
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 776,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed ONE HUNDRED FIFTEEN percent (115%) of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is **AEGIS WHOLESALE CORPORATION**. I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 1.5000 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### (B) Interest Rate Change Dates

The interest rate I will pay may change on the first day of **July, 2007**, and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

### (C) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding **THREE and 575/1000** percentage point(s) ( 3.575 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than 9.9500 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

INITIALS: MTN      BN

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the first day of each month beginning on **July 1, 2007.** I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **June 1, 2037,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 422039, HOUSTON, TX 77242-4239, or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 2,678.13 unless adjusted under Section 3(F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the first day of **July, 2008,** and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

PayOption ARM Note - MTA Index
FE-5312 (0511)

INITIALS: _MTN_    _BN_

Case: 21-51127    Doc# 33    Filed: 11/30/21    Entered: 11/30/21 14:53:40    Page 37 of 89


(F) **Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent (115%) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

(G) **Required Full Payment**

On the tenth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

(H) **Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are **greater** than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

## 4. NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

INITIALS: ᴜᴛᴛⱽ  Ⱨⱺⱴ

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

PayOption ARM Note – MTA Index
FE-5312 (0511)

INITIALS: MHN    Bv

Case: 21-51127   Doc# 33   Filed: 11/30/21   Entered: 11/30/21 14:53:40   Page 39 of 89

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

INITIALS: MTN    BⲚ✓

Case: 21-51127   Doc# 33   Filed: 11/30/21   Entered: 11/30/21 14:53:40   Page 40 of 89

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

*Brenda Noble* ..............................(Seal)
BRENDA NOBLE —Borrower

*Michael T. Noble* ..............................(Seal)
MICHAEL T. NOBLE —Borrower

*[Sign Original Only]*

PayOption ARM Note - MTA Index
FE-5312 (0511)

*(Page 6 of 6 Pages)*

Borrower: BRENDA NOBLE

II

## ALLONGE TO NOTE

For purposes of further endorsement of the following described Note, the allonge is affixed and becomes a permanent part of the Note.

Note Date:           May 9, 2007

Loan Amount:         776,000.00

Borrower:            BRENDA NOBLE AND MICHAEL T. NOBLE

Property Address:    19024 FIELDSTONE COURT, SALINAS, CALIFORNIA 93908


PAY TO THE ORDER OF
AEGIS MORTGAGE CORPORATION
WITHOUT RECOURSE

AEGIS WHOLESALE CORPORATION

By: _____

Its: _____Jacqueline Massabki_____
           VP & Asst. Secretary  (Printed Name and Title)


PAY TO THE ORDER OF

WITHOUT RECOURSE

AEGIS MORTGAGE CORPORATION

By: _____

Its: _____Jacqueline Massabki_____
           VP & Asst. Secretary (Printed Name and Title)


PAY TO THE ORDER OF
Countrywide Home Loans, Inc
WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

BY _____Laurie Meder_____
        LAURIE MEDER
        SENIOR VICE PRESIDENT

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC

BY _____ Michele Sjolander

MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

PAY TO THE ORDER OF
COUNTRYWIDE BANK, FSB
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY: _____ Michele Sjolander

MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

BY _____ Laurie Meder

LAURIE MEDER
SENIOR VICE PRESIDENT

# EXHIBIT "3"



Recording Requested By:
**Bank of America**
Prepared By: Diana De Avila
1800 Tapo Canyon Road
Simi Valley, CA 93063
800-444-4302
When recorded mail to:
CoreLogic
Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX 76262-9823

Property Address:
19024 Fieldstone Ct
Salinas, CA 93908-1558
CA0-ADT ▉ 8/16/2012

Stephen L. Vagnini
Monterey County Recorder
Recorded at the request of
**Filer**

CRREBECCA
8/28/2012
13:13:32

DOCUMENT: **2012050176**



Titles: 1/ Pages: 2

Fees....    15.00
Taxes...
Other...
AMT PAID    $15.00

*This space for Recorder's use*

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA, N.A.** whose address is C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:    AEGIS WHOLESALE CORPORATION
Original Borrower(s):    BRENDA NOBLE AND MICHAEL T NOBLE , WIFE AND HUSBAND, AS JOINT TENANTS
Original Trustee:    COMMONWEALTH LAND TITLE
Date of Deed of Trust:    5/9/2007
Original Loan Amount:    $776,000.00

Recorded in Monterey County, CA on: 5/24/2007, book N/A, page N/A and instrument number 2007041846

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
<u>AUG 16 2012</u>

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____

~~Richard Paz Assistant Secretary~~

Stephen L. Vagnini
Monterey County Recorder

CRMELISSA
5/12/2014
01:25 PM

AVENUE 365-ER SIMPLIFILE

DOCUMENT: **2014021622**

| Titles: | 1 | Pages: | 2 |
|---|---|---|---|
| Fees . . . . | | | 24.00 |
| Taxes . . . | | | .00 |
| Other . . . | | | .00 |
| AMT PAID | | | $24.00 |

Recording Requested By:
**Bank of America**
Prepared By: **Diana De Avila**
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**
**800-444-4302**
When recorded mail to:
**Fay Servicing, LLC C/O: Robert (Tres)**
**Mackey**
**Ref: Trailing Documents - USROF/NB**
**939 W. North Avenue Suite 680**
**Chicago, IL 60642**

Property Address:
**19024 Fieldstone Ct**
**Salinas, CA 93908-1558**
CA0-ADT          3/31/2014  FAY0131

This space for Recorder's use

# ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063** does hereby grant, sell, assign, transfer and convey unto **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR PROF-2013-S3 REMIC TRUST III.** whose address is **60 LIVINGSTON AVENUE, EP-MN-WS3D, ST. PAUL, MN 55107, ATTENTION: STRUCTURED FINANCE SERVICES – PROF** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Beneficiary: | **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AEGIS WHOLESALE CORPORATION, ITS SUCCESSORS AND ASSIGNS** |
| Original Borrower(s): | **BRENDA NOBLE AND MICHAEL T NOBLE , WIFE AND HUSBAND, AS JOINT TENANTS** |
| Original Trustee: | **COMMONWEALTH LAND TITLE** |
| Date of Deed of Trust: | **5/9/2007** |
| Original Loan Amount: | **$776,000.00** |

Recorded in Monterey County, CA on: 5/24/2007, book N/A, page N/A and instrument number 2007041846

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
*4—1—14*

**BANK OF AMERICA, N.A.**

By: *[signature]*
Martha Munoz
Assistant Vice President

State of California
County of ~~Los Angeles~~ Ventura

On __APR 0 1 2014__ before me, __Victoria Cook__, Notary Public, personally appeared
__Martha Munoz__, who proved to me on the basis of satisfactory evidence to be the person
(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: __Victoria Cook__         (Seal)
My Commission Expires: __6/28/16__

VICTORIA COOK
Commission # 1982192
Notary Public - California
Ventura County
My Comm. Expires Jun 28, 2016

Recording Requested by
M E Wileman

PLEASE FORWARD RECORDED
DOCUMENT TO AND PREPARED BY
M E Wileman
2860 Exchange Blvd # 100
Southlake, TX 76092

Stephen L. Vagnini          CRSUSY
Monterey County Recorder    9/21/2015
Recorded at the request of  12 41 37
**Bank**

DOCUMENT: **2015053002** | Titles 1/ Pages 1

| Fees | 21 00 |
| Taxes | |
| Other | |
| AMT PAID | $21 00 |

## Assignment of Deed of Trust

Send Any Notices To Assignee

For Valuable Consideration, the undersigned, U S BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR PROF-2013-S3 REMIC TRUST III  60 Livingston Avenue, EP-MN-WS3D, St Paul, MN 55107 (Assignor) by these presents does assign and set over, without recourse, to USROF III LEGAL TITLE TRUST 2015-1, BY U S BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE  60 Livingston Avenue, EP-MN-WS3D, St Paul, MN 55107 (Assignee) the described deed of trust with all interest, all liens, any rights due or to become due thereon, executed by BRENDA NOBLE AND MICHAEL T NOBLE, WIFE AND HUSBAND, AS JOINT TENANTS to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC , (MERS) AS NOMINEE FOR AEGIS WHOLESALE CORPORATION  ITS SUCCESSORS AND ASSIGNS  Trustee  COMMONWEALTH LAND TITLE  Said deed of trust Dated  5/9/2007 is recorded in the State of CA, County of Monterey on 5/24/2007, Instrument 2007041846 AMOUNT  $ 776,000 00      Property Address  19024 FIELDSTONE COURT, SALINAS, CA 93908

IN WITNESS WHEREOF, the undersigned corporation/trust has caused this instrument to be executed as a sealed instrument by its proper officer  Executed on   September 10, 2015
U S  BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR PROF-2013-S3 REMIC TRUST III
Orion Financial Group, Inc  Its Attorney in Fact

By _____

Connie M  Riggsby, Vice President



State of Texas, County of Tarrant
        Before me, F  Holley, Notary Public, personally appeared, Connie M  Riggsby, Vice President known to me to be the person(s) whose name(s) is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed
Given under my hand and seal of office on 09/10/2015

F HOLLEY
Notary Public State of Texas
My Commission Expires
August 19, 2019

_F Holley_

Notary public, F  Holley
My commission expires  August 19, 2019

CA  Monterey

Recording Requested by:
M. E. Wileman

PLEASE FORWARD RECORDED
DOCUMENT TO AND PREPARED BY:
M. E. Wileman
2860 Exchange Blvd. # 100
Southlake, TX 76092

Stephen L. Vagnini          CRKATHY
Monterey County Recorder    10/25/2016
Recorded at the request of  13:10:48
Filer

DOCUMENT: **2016064759**  Titles: 1/ Pages: 1



Fees ...    21.00
Taxes...
Other...
AMT PAID    $21.00

## Assignment of Deed of Trust

Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, U.S. ROF III LEGAL TITLE TRUST 2015-1, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107 (Assignor) by these presents does assign and set over, without recourse, to PROF-2013-S3 LEGAL TITLE TRUST, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107 (Assignee) the described deed of trust with all interest, all liens, any rights due or to become due thereon, executed by **BRENDA NOBLE AND MICHAEL T NOBLE, WIFE AND HUSBAND AS JOINT TENANTS** to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS) AS NOMINEE FOR AEGIS WHOLESALE CORPORATION ITS SUCCESSORS AND ASSIGNS. Trustee: COMMONWEALTH LAND TITLE Said deed of trust *Dated: 5/9/2007 is recorded in the State of CA, County of* **Monterey on 5/24/2007, Instrument 2007041846 AMOUNT: $776,000.00**     Property Address: 19024 FIELDSTONE CT, SALINAS, CA 93908

IN WITNESS WHEREOF, the undersigned corporation/trust has caused this instrument to be executed as a sealed instrument by its proper officer. Executed on: October 19, 2016
U.S. ROF III LEGAL TITLE TRUST 2015-1, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE
by Orion Financial Group, Inc. Its Attorney-In-Fact

By: _____

Melanie A. Arndt, Vice President

State of Texas
County of Tarrant
        Before me, F. Holley, Notary Public, personally appeared, Melanie A. Arndt, Vice President known to me to be the person(s) whose name(s) is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
Given under my hand and seal of office on 10/19/2016.

F. HOLLEY
Notary Public, State of Texas
My Commission Expires
August 19, 2019

Notary public, F. Holley
My commission expires: August 19, 2019

CA Monterey

Recording Requested by:
C. R. Hall

PLEASE FORWARD RECORDED
DOCUMENT TO AND PREPARED BY:
C. R. Hall
2860 Exchange Blvd. # 100
Southlake TX 76092

**Stephen L. Vagnini**
MontereyCounty Clerk-Recorder
Recorded at the request of:
FIRST AMERICAN TITLE INSURAN

# 2018038897

09/04/2018 09:10:29
Titles: 1     Pages: 1
Fees: $95.00
Taxes: $0.00
AMT PAID: $95.00

## Assignment of Deed of Trust

Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, **PROF-2013-S3 LEGAL TITLE TRUST, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE  60 Livingston Avenue, EP-MN-WS3D, St. Paul MN 55107 (Assignor)** by these presents does assign and set over, without recourse, to **1900 CAPITAL TRUST I, BY U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE  7101 Wisconsin Ave., Suite 1012, Bethesda MD 20814 (Assignee)** the described deed of trust with all interest, all liens, any rights due or to become due thereon, executed by **BRENDA NOBLE AND MICHAEL T. NOBLE, WIFE AND HUSBAND AS JOINT TENANTS** to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS) AS NOMINEE FOR AEGIS WHOLESALE CORPORATION ITS SUCCESSORS AND ASSIGNS.  Trustee: COMMONWELATH LAND TITLE  Said deed of trust **Dated: 5/9/2007** is recorded in the **State of CA, County of Monterey on 5/24/2007, Instrument 2007041846 AMOUNT: $ 776,000.00** Property Address: 19024 FIELDSTONE COURT, SALINAS, CA 93908

IN WITNESS WHEREOF, the undersigned entity has caused this instrument to be executed as a sealed instrument by its proper signatory.  Executed on:  May 3, 2018
PROF-2013-S3 LEGAL TITLE TRUST, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE
by Orion Financial Group, Inc. Its Attorney-In-Fact

By: _____

Connie M. Riggsby, Vice President

State of TX
County of Tarrant

    Before me, C. Lafferty, Notary Public, personally appeared, Connie M. Riggsby, Vice President known to me to be the person(s) whose name(s) is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
Given under my hand and seal of office on 05/03/2018.

C. LAFFERTY
MY COMMISSION EXPIRES
November 30, 2018

Notary public, C. Lafferty
My commission expires: November 30, 2018

**2019004425**

Stephen L. Vagnini
Monterey County Clerk-Recorder

02/04/2019 03:55 PM

Recorded at the request of:
NATIONWIDE TITLE CLEARING, I

Titles: 1     Pages: 1

Fees:  $95.00
Taxes: $0.00
AMT PAID: $95.00

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING, INC.

[AND WHEN RECORDED MAIL TO]
MCM CAPITAL, LLC
7101 WISCONSIN AVE
BETHESDA, MD 20814

## CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, 1900 CAPITAL TRUST I, BY U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE, WHOSE ADDRESS IS 7101 WISCONSIN AVE SUITE 1012, BETHESDA, MD 20814, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust, representation or warranty, together with all rights, title and interest secured thereby, all liens, and any rights due or to become due thereon to 1900 CAPITAL TRUST III, BY U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE, WHOSE ADDRESS IS 7101 WISCONSIN AVE SUITE 1012, BETHESDA, MD 20814, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Deed of Trust made by BRENDA NOBLE AND MICHAEL T. NOBLE and recorded on 05/24/2007 as **Doc # 2007041846** in the office of the MONTEREY County Recorder, CA.

Dated on ___/___/___ (MM/DD/YYYY)

1900 CAPITAL TRUST I, BY U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE

By: _____
Lauren Shea
VICE PRESIDENT

## ACKNOWLEDGEMENT

STATE OF MARYLAND
COUNTY OF MONTGOMERY

On ___/___/___ (MM/DD/YYYY), before me, the under-signed officer, personally appeared Lauren Shea, VICE PRESIDENT of 1900 CAPITAL TRUST I, BY U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE, who acknowledged that he/she/they, as such VICE PRESIDENT, being authorized to do so, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself /herself/themselves as VICE PRESIDENT. In witness whereof I hereunto set my hand and official seal. He/she/they is (are) personally known to me.

_____
Jamie L. Mertz
Notary Public - State of MARYLAND
Commission expires: 06/12/2022

JAMIE L. MERTZ
NOTARY PUBLIC
MONTGOMERY COUNTY
MARYLAND
MY COMMISSION EXPIRES 6-12-2022

Document Prepared By: MCM Capital, LLC, 7101 Wisconsin Ave Suite 1012, Bethesda, MD 20814 (240) 744-3113
MCMAS██████████BAML-1  T271812-05:30:06 [PREP-1] FRMCA1

Stephen L. Vagnini
MontereyCounty Clerk-Recorder
Recorded at the request of:
MERIDIAN ASSET SERVICES - AP

**2019021428**

05/29/2019 10:55:06
Titles: 1    Pages: 2

Fees: $98.00
Taxes: $0.00
AMT PAID: $98.00

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_____ Space above for Recorder's use _____

### ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **1900 CAPITAL TRUST III, BY U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE**, whose address is 7101 WISCONSIN AVE, SUITE 1012, BETHESDA, MD 20814, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE BUNGALOW SERIES III TRUST**, whose address is 7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 5/9/2007
Original Loan Amount: $776,000.00
Executed by (Borrower(s)): **BRENDA NOBLE & MICHAEL T. NOBLE**
Original Trustee: **COMMONWEALTH LAND TITLE**
Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AEGIS WHOLESALE CORPORATION, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book N/A, Page N/A, Document/Instrument No: 2007041846 in the Recording District of **MONTEREY, CA, Recorded on 5/24/2007.**

Property more commonly described as: **19024 FIELDSTONE COURT, SALINAS, CALIFORNIA 93908**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _5\14\2019_

**1900 CAPITAL TRUST III, BY U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE**

By: LAUREN SHEA
Title: **VICE PRESIDENT**

Witness Name: **KRYSTLE DEROCCO**

2

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of **MARYLAND**
County of **MONTGOMERY**

On _____5|14|2019_____, before me, JAMIE L. MERTZ, a Notary Public, personally appeared LAUREN SHEA, VICE PRESIDENT of/for **1900 CAPITAL TRUST III, BY U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE,** personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of MARYLAND that the foregoing paragraph is true and correct. I further certify LAUREN SHEA, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_(signature)_

(Notary Name): JAMIE L. MERTZ
My commission expires: 06/12/2022

**JAMIE L. MERTZ**
**NOTARY PUBLIC**
**MONTGOMERY COUNTY**
**MARYLAND**
**MY COMMISSION EXP. JUNE 12, 2022**

# EXHIBIT "4"

09/17/2008

Brenda Noble
Michael T. Noble
19024 Fieldstone Court
Salinas, CA 93908

Re: CB Loan#: ███████████

Property Address: 19024 Fieldstone Court
Salinas, CA 93908

Dear Brenda Noble,

We are pleased to advise you that your loan modification has been approved. In order for the modification to be valid, the enclosed documents need to be signed, notarized and returned with the requested modification fee.

Your new modified interest only monthly payment will be $2,871.66, effective with your 11/01/2008, payment.
*This payment is subject to change if your escrow account is reanalyzed.*
**In order for this modification to become effective on 11/01/2008 you must make your normal monthly payment for 10/01/2008 in the amount of $2,878.99.**
A breakdown of your modified monthly payment is as follows:

| | |
|---|---|
| **Interest Only:** | **2,871.66** |
| **Escrow Items:** | **0.00** |
| **Optional Insurance:** | **0.00** |
| **Total Payment:** | **2,871.66** |

This offer is contingent on the following:

**The modification fee of $500.00 <u>must</u> be paid in order for the modification to become effective.**



Interest-Only Period LIBOR ARM Note 1E863 (09/07) Form 3530 11/01 (9/06)
MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE—ONE-YEAR LIBOR INDEX
Single Family—Fannie Mae Uniform Instrument          1

The following documents have been enclosed:

**Conversion Disclosure**

**Modification of Note**– **must be signed in the presence of a notary. The notary acknowledgment must be in recordable form.** All parties who own an interest in the property must sign the modification agreement, whether or not they are the "borrower".

**Exhibit "A" to Modification Agreement** – **must be signed in the presence of a notary. The notary acknowledgment must be in recordable form.** All parties who own an interest in the property must sign the modification agreement, whether or not they are the "borrower".

**Instructions for Filling Out the Notary Page** - It is the homeowner's responsibility to ensure that the notary page is properly filled out. Thus, it is necessary to bring this page and the sample notary page with you when you go before a notary to have the blank notary page signed.

If you have received a discharge in bankruptcy, and you were a borrower on the loan that is the subject of this Modification at the time of the filing of such bankruptcy, this discharge relieves you of all personal liability on the loan and Lender may not attempt to collect this debt from you personally. This Modification in no way attempts to revive a discharged debt or impose personal liability against you on any such discharged debt; provided, however, in the event of a default, Lender retains the right to enforce its lien against the property, which includes foreclosure.

**Please return all of the enclosed documents to us in the enclose pre-paid Fed-Ex envelope no later than 09/25/2008, together with funds of $500.00 (with loan number on the check and made out to Countrywide Bank, FSB) for the modification fee to the following address:**

Countrywide Bank, FSB
Attn: , PTX A-242
7105 Corporate Drive
Plano, TX 75024

We look forward to receiving all of the required documents and funds before the deadline and completing your loan modification. If you have any questions about this letter or the enclosed documents, please call me at 888-468-4709 Ext.3545.

Sincerely,

*Mike Bowers*

Mike Bowers
Modification Representative
Countrywide Bank, FSB

Interest-Only Period LIBOR ARM Note I E863 (09/07) Form 3530 11/01 (9/06)
MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE—ONE-YEAR LIBOR INDEX
Single Family—Fannie Mae Uniform Instrument                                    2

Case: 21-51127    Doc# 33    Filed: 11/30/21    Entered: 11/30/21 14:53:40    Page 56 of 89

# Conversion To 5/1 Interest Only Mortgage

Countrywide Bank
450 American Way
Simi Valley, CA 93065

**Notice Date:**
09/17/2008

Brenda Noble
Michael T. Noble
19024 Fieldstone Court
Salinas, CA 93908

**Account No.:**
<span style="background:black">████████</span>

**Property Address:**
19024 Fieldstone Court
Salinas, CA 93908

---

**IMPORTANT MESSAGE ABOUT YOUR LOAN**

Your loan is about to be converted from a PayOption Adjustable Rate Mortgage (ARM) into a 5/1 ARM with 10 Years Interest Only Mortgage in accordance with the Modification of Note.

**HOW WE CALCULATE YOUR NEW MONTHLY PAYMENT:**

**Step 1:** Determine your new interest rate

|              | Current | New     |
|--------------|---------|---------|
| **Loan Index:** | 2.855%  | 3.214%  |
| **Margin:**     | 3.575%  | 2.250%  |
| **Total:**      | 6.430%  | 5.464%  |
| **Rounding:**   | 6.375%  | N/A     |
| **Actual Rate:** | 6.375% | 4.250%  |

**Step 2:** Determine new payment amount

Your new monthly interest rate and payment are fixed as shown below:

| | |
|---|---|
| New Interest Rate | 4.250% |
| Anticipated Principal Balance [1] | 810,821.05 |
| Remaining Term as of 11/01/2008 | 464 months |
| New Interest payment | 2,871.66 |
| **New Payment Effective 11/01/2008** | |

**If you have an escrow account, this notice does not address any changes to your escrow payment. Please refer to your monthly statement for information regarding your current escrow payment.**

---

**THANK YOU FOR YOUR BUSINESS**

You are a valued customer at Countrywide Bank, FSB and it is our continued goal to provide you with the highest level of customer satisfaction. Please contact us at 800-293-0671 should you have any questions about the modification of your mortgage loan. https://customers.countrywide.com

---

[1] Anticipated principal balance is the unpaid Principal that you are expected to owe at the Payment Change Date, and is calculated based on the assumption that Principal and Interest payments will be remitted on payments due prior to the new payment effective date.
Interest-Only Period LIBOR ARM Note 1E863 (09/07) Form 3530 11/01 (9/06)
MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE—ONE-YEAR LIBOR INDEX
Single Family—Fannie Mae Uniform Instrument

## MODIFICATION OF NOTE

This Modification of Note ("Modification") is made on 09/17/2008, between BRENDA NOBLE AND MICHAEL T. NOBLE, WIFE AND HUSBAND, AS JOINT TENANTS, ("Borrower") and **Countrywide Bank, FSB.** ("Lender"), for a Modification of that certain Note executed on 05/09/2007, in favor of MERS which note is secured by a Security Instrument on the real property described in the Security Instrument and located at 19024 Fieldstone Court Salinas, CA 93908. The Note is amended as follows:

1. In consideration of this Modification, Borrower agrees to pay Lender a modification fee of $500.00.

2. The terms of the Note are amended and modified as indicated below and in the attached **Exhibit "A".** If the information below conflicts with information in **Exhibit "A"**, the information below controls. The terms of any rider to the Security Instrument are superseded by the terms of the Note as modified and Borrower agrees that this Modification may be recorded at Lender's option.

3. If the Note includes a prepayment penalty provision, such provision shall remain in full force and effect in accordance with its terms notwithstanding any language to the contrary contained in **Exhibit "A".**

4. Nothing in this Modification will invalidate, impair or release any term or condition in the Note or the Security Instrument which will remain in full force and effect.

5. Nothing in this Modification will be understood or construed as a substitution, transference or novation of the existing debt.

This Modification is executed by Borrower, effective the date first above written.

BORROWER(S):

_Brenda Noble_
Brenda Noble

_michael Noble_
Michael T. Noble

_____

_____

STATE OF _California, Monterey_ County

This instrument was acknowledged before me on _October 2, 2008_, by

_Brenda Noble and Michael T. Noble who proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacities and that by their signatures on the instrument the persons, or the entity upon behalf of which the persons acted, executed the instrument. I certify under penalty of perjury under the laws of the state of California that the foregoing paragraph is true and correct._

Notary Public

Printed Name _Sonia M. Lopez_
My Commission Expires: _March 11, 2011_

SONIA M. LOPEZ
Commission # 1725286
Notary Public - California
Monterey County
My Comm. Expires Mar 11, 2011

Interest-Only Period LIBOR ARM Note 1E863 (09/07) Form 3530 11/01 (9/06)
MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE—ONE-YEAR LIBOR INDEX
Single Family—Fannie Mae Uniform Instrument

4

# INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE

### ONE-YEAR LIBOR INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL* )
### RATE CAPS – 10 YEAR INTEREST-ONLY PERIOD

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

09/17/2008

Salinas, CA 93908

19024 Fieldstone Court

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $810,821.05 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is Countrywide Bank, FSB. I will make all payments under this Note in the form of cash, check or money order.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 4.250%. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will make a payment on the first day of every month, beginning on November 2008. Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied first to interest before Principal. If, on 06/01/2047, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at:
**P.O. Box 10219, Van Nuys, CA 91410-0219**
or at a different place if required by the Note Holder.

#### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $2,871.66 until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest, at the rate determined as described in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.

Case: 21-51127   Doc# 33   Filed: 11/30/21   Entered: 11/30/21 14:53:40   Page 59 of 89

**(C)     Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

**4.     ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A)     Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of October 2013, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B)     The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)     Calculation Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two point Two Five percentage points (2.250%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D)     Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 6.250% or less than 2.250%. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 9.250% or less than 2.250%.

**(E)     Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)     Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G)     Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

**5.     BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the

monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.      **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.      **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A)      **Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of interest, during the period when my payment is interest-only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

(B)      **Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)      **Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)      **No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)      **Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8.      **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.      **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

Interest-Only Period LIBOR ARM Note 1E863 (09/07) Form 3530 11/01 (9/06)
MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE—ONE-YEAR LIBOR INDEX
Single Family—Fannie Mae Uniform Instrument

Case: 21-51127    Doc# 33    Filed: 11/30/21    Entered: 11/30/21 14:53:40    Page 61 of 89

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A)       Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)       When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if:  (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
>
> To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.
>
> If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Interest-Only Period LIBOR ARM Note 1E863 (09/07) Form 3530 11/01 (9/06)
MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE—ONE-YEAR LIBOR INDEX
Single Family—Fannie Mae Uniform Instrument

8

EXECUTED this the _2nd_ day _October, 2008_ to be effective 11/01/2008.

_Brenda Noble_                    _Oct 2-08_
**Brenda Noble**                    Date

_Michael T. Noble_                 _10-2-08_
**Michael T. Noble**               Date

STATE OF _California , Monterey_ County

This instrument was acknowledged before me on _October 2, 2008_ by

_Brenda Noble and Michael T. Noble who proved to me on the basis
of satisfactory evidence to be the persons whose names are subscribed
to the within instrument and acknowledged to me that they executed the same
in their authorized capacities, and that by their signatures on the instrument
the persons, or the entity upon behalf of which the persons acted, executed the
instrument. I certify under penalty of perjury under the laws of the State of
California that the foregoing paragraph is true and correct._

Notary Public

Printed Name _Sonia M. Lopez_

My Commission Expires:
_March 11, 2011_

SONIA M. LOPEZ
Commission # 1725286
Notary Public - California
Monterey County
My Comm. Expires Mar 11, 2011

———— *SPACE BELOW FOR INTERNAL USE ONLY* ————

ACCEPTED AND AGREED TO BY
THE OWNER AND HOLDER OF SAID NOTE:
**Countrywide Bank**

By: _____

Name: _____

Title: Attorney in Fact

STATE OF _Texas_  _Collin_ County

This instrument was acknowledged before me on _October 6, 2008_
_____, by
_Nancy Morberg_

_Milan R. Titus_
Notary Public

MILAN R TITUS
My Commission Expires
July 7, 2012

_____
Printed Name
My Commission Expires:

Interest-Only Period LIBOR ARM Note 1E863 (09/07) Form 3530 11/01 (9/06)
MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE—ONE-YEAR LIBOR INDEX
Single Family—Fannie Mae Uniform Instrument

9

## EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF Salinas, COUNTY OF Monterey, STATE OF California AND IS DESCRIBED AS FOLLOWS:

PARCEL I:

Lot 57, as said Lot is shown and designated on that map entitled, "Tract No. 1283, Las Palmas Ranch, Phase II, Unit VI", filed for record September 29, 1997 in Volume 19, Cities and Towns, at Page 47, Monterey County Records, as amended by a Certificate of Correction Recorded October 13, 1999 in Series Number ████████ and also amended by a Certificate of Correction Recorded January 14, 2000 in Series Number ██████.

PARCEL II:

A non-exclusive easement on, over, under and across the "Master Common Area" as defined in the Master Declaration of Covenants, Conditions and Restrictions for Las Palmas Ranch No. 2, recorded September 26, 1995 in Reel 3279, Page 1412, Official Records of Monterey County, California, as amended and restated by document recorded December 27, 1995, in Reel 3316, Page 1339, Official Records of Monterey County, California ("Master Declaration"), for the purposes described in the Master Declaration and subject to the terms, provisions and reservations of the Master Declaration. This Easement is appurtenant to Parcel I above and shall become effective as to each Lot within the Master Common Area upon the later to occur of (I) the recordation of this Deed or (ii) the conveyance of record of the lot within the Master Common Area to the Master Association.

PARCEL III:

A non-exclusive easement, on, over, under and across the "Common Area" as defined in the Declaration of Covenants, Conditions and Restrictions for Fieldcrest at Las Palmas Ranch, recorded September 26, 1995, in Reel 3279, Page 1447, Official Records of Monterey County, California ("Fieldcrest Declaration"), for the purposes described in the Fieldcrest Declaration and subject to the terms, provisions and reservations of the Fieldcrest Declaration. This Easement is appurtenant to Parcel I above and shall become effective as to each Lot within the Common Area upon the later to occur of (I) the recordation of this Deed or (ii) the conveyance of record of the Lot within the Common Area to the Association.

Assessor's Parcel No: ███████████████

Case: 21-51127    Doc# 33    Filed: 11/30/21    Entered: 11/30/21 14:53:40    Page 64 of 89

# EXHIBIT "5"

| Transaction Date | effective date | due date | Transaction Principal Amt | Principal Amount | Interest Amount | escrow amt | End Principal Bal | End Escrow Bal | End Unapplied Bal | Trans Description | Money Type Description | Reversal Code | sub code desc |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/30/2019 | 4/30/2019 | 3/1/2015 | 0 | 0 | 0 | 0 | 810821.05 | -49890.5 | 1867.75 | Service Release | None | None | NULL |
| 4/30/2019 | 4/30/2019 | 3/1/2015 | 1.43 | 0 | 0 | 0 | 810821.05 | -49890.5 | 1867.75 | Late Charge Waive | None | None | NULL |
| 4/24/2019 | 4/24/2019 | 3/1/2015 | -250 | 0 | 0 | 0 | 810821.05 | -49890.5 | 1867.75 | Legal Fees Disb | Check | None | Attorney Cost |
| 4/22/2019 | 4/14/2019 | 3/1/2015 | 617.29 | 0 | 0 | 617.29 | 810821.05 | -49890.5 | 1867.75 | Tax Refund No Report | Check | None | NULL |
| 4/19/2019 | 4/19/2019 | 3/1/2015 | -13 | 0 | 0 | 0 | 810821.05 | -50507.79 | 1867.75 | Other Fees Disb | ACH | None | Property Inspection |
| 4/12/2019 | 4/12/2019 | 2/1/2015 | -1346.01 | 0 | 0 | 0 | 810821.05 | -53332.42 | 1867.75 | Unapplied Payment | Bill Pay | None | NULL |
| 4/12/2019 | 4/12/2019 | 2/1/2015 | 4682.76 | 0 | 1858.13 | 2824.63 | 810821.05 | -50507.79 | 1867.75 | Regular Payment | Bill Pay | None | NULL |
| 3/31/2019 | 3/31/2019 | 2/1/2015 | -1.4 | 0 | 0 | 0 | 810821.05 | -53332.42 | 3213.76 | 3rd Party Recov Fees Disb | ACH | None | BPO |
| 3/26/2019 | 3/26/2019 | 2/1/2015 | -580 | 0 | 0 | 0 | 810821.05 | -53332.42 | 3213.76 | Other Fees Disb | ACH | None | Appraisal |
| 3/21/2019 | 3/21/2019 | 1/1/2015 | -1858.13 | 0 | -1858.13 | 0 | 810821.05 | -53332.42 | 3213.76 | Regular Payment | None | Loan Sale | NULL |
| 3/21/2019 | 3/21/2019 | 1/1/2015 | 0 | 0 | 0 | 0 | 810821.05 | -53332.42 | 3213.76 | Investor Loan Sale | None | None | NULL |
| 3/21/2019 | 3/21/2019 | 1/1/2015 | 0 | 0 | 0 | 0 | 810821.05 | -53332.42 | 3213.76 | Inv Loan Purchase | None | None | NULL |
| 3/21/2019 | 3/21/2019 | 1/1/2015 | 1858.13 | 0 | 1858.13 | 0 | 810821.05 | -53332.42 | 3213.76 | Regular Payment | None | None | NULL |
| 3/19/2019 | 3/19/2019 | 4/11/2019 | -5243.31 | 0 | 0 | -5243.3 | 810821.05 | -53332.42 | 3213.76 | Tax Bill 2 Disbursement | None | None | NULL |
| 3/7/2019 | 3/7/2019 | 1/1/2015 | 1858.14 | 0 | 1858.13 | 0.01 | 810821.05 | -48089.11 | 1735.15 | Regular Payment | Bill Pay | None | NULL |
| 3/7/2019 | 3/7/2019 | 2/1/2015 | 1478.61 | 0 | 0 | 0 | 810821.05 | -48089.11 | 3213.76 | Unapplied Payment | Bill Pay | None | NULL |
| 3/4/2019 | 3/4/2019 | 1/1/2015 | -500 | 0 | 0 | 0 | 810821.05 | -48089.12 | 1735.15 | Legal Fees Disb | Check | None | Attorney Cost |
| 2/27/2019 | 2/27/2019 | 1/1/2015 | -95.1 | 0 | 0 | 0 | 810821.05 | -48089.12 | 1735.15 | 3rd Party Recov Fees Disb | ACH | None | Recording AOM |
| 2/7/2019 | 2/7/2019 | 12/1/2014 | 1858.14 | 0 | 1858.13 | 0.01 | 810821.05 | -48089.12 | 256.54 | Regular Payment | Bill Pay | None | NULL |
| 2/7/2019 | 2/7/2019 | 1/1/2015 | 1478.61 | 0 | 0 | 0 | 810821.05 | -48089.12 | 1735.15 | Unapplied Payment | Bill Pay | None | NULL |
| 1/10/2019 | 1/10/2019 | 11/1/2014 | 1858.14 | 0 | 1858.13 | 0.01 | 810821.05 | -48089.13 | 2114.68 | Regular Payment | None | None | NULL |
| 1/10/2019 | 1/10/2019 | 12/1/2014 | -1858.14 | 0 | 0 | 0 | 810821.05 | -48089.13 | 256.54 | Unapplied Payment | None | None | NULL |
| 1/8/2019 | 1/8/2019 | 10/1/2014 | 1942.6 | 0 | 1942.59 | 0.01 | 810821.05 | -48089.14 | 720.53 | Regular Payment | Bill Pay | None | NULL |
| 1/8/2019 | 1/8/2019 | 11/1/2014 | 1394.15 | 0 | 0 | 0 | 810821.05 | -48089.14 | 2114.68 | Unapplied Payment | Bill Pay | None | NULL |
| 12/18/2018 | 12/18/2018 | 9/1/2014 | -1942.6 | 0 | 0 | 0 | 810821.05 | -48089.16 | 720.53 | Regular Payment | Lockbox | None | NULL |
| 12/18/2018 | 12/18/2018 | 9/1/2014 | 1942.6 | 0 | 1942.59 | 0.01 | 810821.05 | -48089.15 | 720.53 | Regular Payment | Lockbox | None | NULL |
| 12/18/2018 | 12/18/2018 | 10/1/2014 | 1942.6 | 0 | 1942.59 | 0.01 | 810821.05 | -48089.14 | 720.53 | Regular Payment | Lockbox | None | NULL |
| 12/18/2018 | 12/18/2018 | 10/1/2014 | -1942.6 | 0 | -1942.59 | -0.01 | 810821.05 | -48089.15 | 720.53 | Regular Payment | Lockbox | Misapplied Payment | NULL |
| 12/12/2018 | 12/6/2018 | 9/1/2014 | 5243.31 | 0 | 0 | 5243.31 | 810821.05 | -48089.16 | 2663.13 | Tax Refund Report | Check | None | NULL |
| 12/5/2018 | 12/5/2018 | 9/1/2014 | -3.42 | 0 | 0 | 0 | 810821.05 | -53332.47 | 2663.13 | 3rd Party Recov Fees Disb | ACH | None | Tax Search Report |
| 12/5/2018 | 12/5/2018 | 8/1/2014 | 1942.6 | 0 | 1942.59 | 0.01 | 810821.05 | -53332.47 | 1268.98 | Regular Payment | Bill Pay | None | NULL |
| 12/5/2018 | 12/5/2018 | 9/1/2014 | 1394.15 | 0 | 0 | 0 | 810821.05 | -53332.47 | 2663.13 | Unapplied Payment | Bill Pay | None | NULL |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/29/2018 | 11/29/2018 | 7/1/2014 | -1942.6 | 0 | 0 | 0 | 810821.05 | -53332.49 | 1268.98 Unapplied Payment | Lockbox | None | NULL |
| 11/29/2018 | 11/29/2018 | 7/1/2014 | 1942.6 | 0 | 1942.59 | 0.01 | 810821.05 | -53332.48 | 1268.98 Regular Payment | Lockbox | None | NULL |
| 11/13/2018 | 11/13/2018 | 7/1/2014 | -50 | 0 | 0 | 0 | 810821.05 | -53332.49 | 3211.58 3rd Party Recov Fees Disb | Check | None | Attorney Cost - OL |
| 11/13/2018 | 11/13/2018 | 7/1/2014 | -25 | 0 | 0 | 0 | 810821.05 | -53332.49 | 3211.58 3rd Party Recov Fees Disb | Check | None | Filing Cost |
| 11/8/2018 | 11/8/2018 ######### | | -5243.31 | 0 | 0 | -5243.3 | 810821.05 | -53332.49 | 3211.58 Tax Bill 1 Disbursement | None | None | NULL |
| 11/6/2018 | 11/6/2018 | 6/1/2014 | 1942.6 | 0 | 1942.59 | 0.01 | 810821.05 | -48089.18 | 1817.43 Regular Payment | Bill Pay | None | NULL |
| 11/6/2018 | 11/6/2018 | 7/1/2014 | 1394.15 | 0 | 0 | 0 | 810821.05 | -48089.18 | 3211.58 Unapplied Payment | Bill Pay | None | NULL |
| 10/30/2018 | 10/30/2018 | 6/1/2014 | -12.5 | 0 | 0 | 0 | 810821.05 | -48089.19 | 1817.43 3rd Party Recov Fees Disb | ACH | None | Assignment Prep |
| 10/23/2018 | 10/23/2018 | 6/1/2014 | -13 | 0 | 0 | 0 | 810821.05 | -48089.19 | 1817.43 Other Fees Disb | ACH | None | Property Inspection |
| 10/22/2018 | 10/22/2018 | 5/1/2014 | -1942.59 | 0 | -1942.59 | 0 | 810821.05 | -48089.19 | 1817.43 Regular Payment | None | Loan Sale | NULL |
| 10/22/2018 | 10/22/2018 | 5/1/2014 | 0 | 0 | 0 | 0 | 810821.05 | -48089.19 | 1817.43 Investor Loan Sale | None | None | NULL |
| 10/22/2018 | 10/22/2018 | 5/1/2014 | 0 | 0 | 0 | 0 | 810821.05 | -48089.19 | 1817.43 Inv Loan Purchase | None | None | NULL |
| 10/22/2018 | 10/22/2018 | 5/1/2014 | 1942.59 | 0 | 1942.59 | 0 | 810821.05 | -48089.19 | 1817.43 Regular Payment | None | None | NULL |
| 10/8/2018 | 10/8/2018 | 5/1/2014 | -1942.6 | 0 | 0 | 0 | 810821.05 | -48089.2 | 1817.43 Unapplied Payment | Other | None | NULL |
| 10/8/2018 | 10/5/2018 | 5/1/2014 | 1942.6 | 0 | 1942.59 | 0.01 | 810821.05 | -48089.19 | 1817.43 Regular Payment | Other | None | NULL |
| 10/5/2018 | 10/5/2018 | 5/1/2014 | 3336.75 | 0 | 0 | 0 | 810821.05 | -48089.2 | 3760.03 Unapplied Payment | Bill Pay | None | NULL |
| 10/2/2018 | 10/2/2018 | 5/1/2014 | -145 | 0 | 0 | 0 | 810821.05 | -48089.2 | 423.28 Other Fees Disb | ACH | None | BPO/Aprsl Cost |
| 9/10/2018 | 9/10/2018 | 5/1/2014 | -43 | 0 | 0 | 0 | 810821.05 | -48089.2 | 423.28 Legal Fees Disb | Check | None | Attorney Cost |
| 9/10/2018 | 9/10/2018 | 5/1/2014 | -43 | 0 | 0 | 0 | 810821.05 | -48089.2 | 423.28 Legal Fees Disb | Check | None | Attorney Cost |
| 9/10/2018 | 9/10/2018 | 5/1/2014 | -13 | 0 | 0 | 0 | 810821.05 | -48089.2 | 423.28 Other Fees Disb | ACH | None | Property Inspection |
| 9/7/2018 | 9/7/2018 | 1/1/2014 | -7770.4 | 0 | 0 | 0 | 810821.05 | -48089.24 | 423.28 Unapplied Payment | Other | None | NULL |
| 9/7/2018 | 9/7/2018 | 1/1/2014 | 1942.6 | 0 | 1942.59 | 0.01 | 810821.05 | -48089.23 | 423.28 Regular Payment | Other | None | NULL |
| 9/7/2018 | 9/7/2018 | 2/1/2014 | 1942.6 | 0 | 1942.59 | 0.01 | 810821.05 | -48089.22 | 423.28 Regular Payment | Other | None | NULL |
| 9/7/2018 | 9/7/2018 | 3/1/2014 | 1942.6 | 0 | 1942.59 | 0.01 | 810821.05 | -48089.21 | 423.28 Regular Payment | Other | None | NULL |
| 9/7/2018 | 9/7/2018 | 4/1/2014 | 1942.6 | 0 | 1942.59 | 0.01 | 810821.05 | -48089.2 | 423.28 Regular Payment | Other | None | NULL |
| 9/6/2018 | 9/6/2018 | 12/1/2013 | -1942.6 | 0 | 0 | 0 | 810821.05 | -48089.25 | 1520.18 Unapplied Payment | Other | None | NULL |
| 9/6/2018 | 9/6/2018 | 12/1/2013 | 1942.6 | 0 | 1942.59 | 0.01 | 810821.05 | -48089.24 | 1520.18 Regular Payment | Other | None | NULL |
| 9/6/2018 | 9/6/2018 | 1/1/2014 | 6673.5 | 0 | 0 | 0 | 810821.05 | -48089.24 | 8193.68 Unapplied Payment | Lockbox | None | NULL |
| 9/5/2018 | 9/5/2018 | 12/1/2013 | 3336.75 | 0 | 0 | 0 | 810821.05 | -48089.25 | 3462.78 Unapplied Payment | Bill Pay | None | NULL |
| 8/29/2018 | 8/29/2018 | 12/1/2013 | -6.25 | 0 | 0 | 0 | 810821.05 | -48089.25 | 126.03 3rd Party Recov Fees Disb | ACH | None | Certified Mail Cost |
| 8/22/2018 | 8/22/2018 | 12/1/2013 | -0.08 | 0 | 0 | 0 | 810821.05 | -48089.25 | 126.03 3rd Party Recov Fees Disb | ACH | None | Skip Trace - OL |
| 8/2/2018 | 8/2/2018 | 12/1/2013 | -13 | 0 | 0 | 0 | 810821.05 | -48089.25 | 126.03 Other Fees Disb | ACH | None | Property Inspection |
| 8/2/2018 | 8/2/2018 | 12/1/2013 | -1.4 | 0 | 0 | 0 | 810821.05 | -48089.25 | 126.03 3rd Party Recov Fees Disb | ACH | None | BPO |
| 8/2/2018 | 8/2/2018 | 12/1/2013 | -1.4 | 0 | 0 | 0 | 810821.05 | -48089.25 | 126.03 3rd Party Recov Fees Disb | ACH | None | BPO |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/20/2018 | 7/20/2018 | 12/1/2013 | -86 | 0 | 0 | 0 | 810821.05 | -48089.25 | 126.03 Legal Fees Disb | Check | None | Attorney Cost |
| 7/20/2018 | 7/20/2018 | 12/1/2013 | -64.5 | 0 | 0 | 0 | 810821.05 | -48089.25 | 126.03 Legal Fees Disb | Check | None | Attorney Cost |
| 7/20/2018 | 7/20/2018 | 12/1/2013 | -43 | 0 | 0 | 0 | 810821.05 | -48089.25 | 126.03 Legal Fees Disb | Check | None | Attorney Cost |
| 7/20/2018 | 7/20/2018 | 12/1/2013 | -43 | 0 | 0 | 0 | 810821.05 | -48089.25 | 126.03 Legal Fees Disb | Check | None | Attorney Cost |
| 7/20/2018 | 7/20/2018 | 12/1/2013 | -64.5 | 0 | 0 | 0 | 810821.05 | -48089.25 | 126.03 3rd Party Recov Fees Disb | Check | None | Attorney Cost - OL |
| 7/17/2018 | 7/17/2018 | 12/1/2013 | 211.5 | 0 | 0 | 0 | 810821.05 | -48089.25 | 126.03 Legal Fee Payment | Lockbox | None | NULL |
| 7/17/2018 | 7/17/2018 | 12/1/2013 | -211.5 | 0 | 0 | 0 | 810821.05 | -48089.25 | 126.03 Other Fee Payment | Lockbox | None | NULL |
| 7/4/2018 | 7/4/2018 | 12/1/2013 | -64.5 | 0 | 0 | 0 | 810821.05 | -48089.25 | 126.03 3rd Party Recov Fees Disb | Check | None | Bk Costs |
| 7/2/2018 | 7/2/2018 | 12/1/2013 | -17.4 | 0 | 0 | 0 | 810821.05 | -48089.25 | 126.03 3rd Party Recov Fees Disb | Check | None | Property Pres |
| 7/2/2018 | 7/2/2018 | 12/1/2013 | -13 | 0 | 0 | 0 | 810821.05 | -48089.25 | 126.03 Other Fees Disb | ACH | None | Property Inspection |
| 6/25/2018 | 6/25/2018 | 11/1/2013 | 1942.6 | 0 | 1942.59 | 0.01 | 810821.05 | -48089.25 | 2068.63 Regular Payment | Other | None | NULL |
| 6/25/2018 | 6/25/2018 | 12/1/2013 | -1942.6 | 0 | 0 | 0 | 810821.05 | -48089.25 | 126.03 Unapplied Payment | Other | None | NULL |
| 6/22/2018 | 6/22/2018 | 3/1/2013 | -22973.36 | 0 | 0 | 0 | 810821.05 | -48089.34 | 2068.63 Unapplied Payment | Other | None | NULL |
| 6/22/2018 | 6/22/2018 | 3/1/2013 | 2871.67 | 0 | 2871.66 | 0.01 | 810821.05 | -48089.33 | 2068.63 Regular Payment | Other | None | NULL |
| 6/22/2018 | 6/22/2018 | 4/1/2013 | 2871.67 | 0 | 2871.66 | 0.01 | 810821.05 | -48089.32 | 2068.63 Regular Payment | Other | None | NULL |
| 6/22/2018 | 6/22/2018 | 5/1/2013 | 2871.67 | 0 | 2871.66 | 0.01 | 810821.05 | -48089.31 | 2068.63 Regular Payment | Other | None | NULL |
| 6/22/2018 | 6/22/2018 | 6/1/2013 | 2871.67 | 0 | 2871.66 | 0.01 | 810821.05 | -48089.3 | 2068.63 Regular Payment | Other | None | NULL |
| 6/22/2018 | 6/22/2018 | 7/1/2013 | 2871.67 | 0 | 2871.66 | 0.01 | 810821.05 | -48089.29 | 2068.63 Regular Payment | Other | None | NULL |
| 6/22/2018 | 6/22/2018 | 8/1/2013 | 2871.67 | 0 | 2871.66 | 0.01 | 810821.05 | -48089.28 | 2068.63 Regular Payment | Other | None | NULL |
| 6/22/2018 | 6/22/2018 | 9/1/2013 | 2871.67 | 0 | 2871.66 | 0.01 | 810821.05 | -48089.27 | 2068.63 Regular Payment | Other | None | NULL |
| 6/22/2018 | 6/22/2018 | 10/1/2013 | 2871.67 | 0 | 2871.66 | 0.01 | 810821.05 | -48089.26 | 2068.63 Regular Payment | Other | None | NULL |
| 6/19/2018 | 6/19/2018 | 3/1/2013 | 3336.75 | 0 | 0 | 0 | 810821.05 | -48089.34 | 25041.99 Unapplied Payment | Check | None | NULL |
| 6/7/2018 | 6/7/2018 | 3/1/2013 | -48089.34 | 0 | 0 | -48089 | 810821.05 | -48089.34 | 21705.24 Escrow Adjustment | None | None | NULL |
| 5/29/2018 | 5/29/2018 | 3/1/2013 | -13.5 | 0 | 0 | 0 | 810821.05 | 0 | 21705.24 Other Fees Disb | ACH | None | Property Inspection |
| 5/18/2018 | 5/18/2018 | 3/1/2013 | 3336.75 | 0 | 0 | 0 | 810821.05 | 0 | 21705.24 Unapplied Payment | Wire | None | NULL |
| 5/16/2018 | 5/16/2018 | 3/1/2013 | 0 | 810821.1 | 0 | 0 | 810821.05 | 0 | 18368.49 New Loan | None | None | NULL |
| 5/11/2018 | 5/11/2018 | 3/1/2013 | -18368.49 | 0 | 0 | 0 | 810821.05 | 0 | 18368.49 Unapplied Payment | PriorServicer | None | NULL |
| 5/11/2018 | 5/11/2018 | 3/1/2013 | 1.43 | 0 | 0 | 0 | 810821.05 | 0 | 18368.49 Late Charge Waive | PriorServicer | None | NULL |
| 4/19/2018 | 4/19/2018 | 3/1/2013 | -43 | 0 | 0 | 0 | 810821.05 | 0 | 36736.98 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 4/19/2018 | 4/19/2018 | 3/1/2013 | -150.5 | 0 | 0 | 0 | 810821.05 | 0 | 36736.98 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 4/19/2018 | 4/19/2018 | 3/1/2013 | -64.5 | 0 | 0 | 0 | 810821.05 | 0 | 36736.98 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 4/10/2018 | 4/9/2018 | 3/1/2013 | 3336.75 | 0 | 0 | 0 | 810821.05 | 0 | 36736.98 Unapplied Payment | PriorServicer | None | NULL |
| 3/19/2018 | 3/19/2018 | 3/1/2018 | -21.5 | 0 | 0 | 0 | 810821.05 | 0 | 33400.23 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 3/19/2018 | 3/19/2018 | 3/1/2018 | -21.5 | 0 | 0 | 0 | 810821.05 | 0 | 33400.23 Legal Fee Assessment | PriorServicer | None | Attorney Cost |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/19/2018 | 3/19/2018 | 3/1/2018 | -21.5 | 0 | 0 | 0 | 810821.05 | 0 | 33400.23 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 3/16/2018 | 3/16/2018 | 3/1/2018 | -5362.01 | 0 | 0 | -5362 | 810821.05 | 0 | 33400.23 Tax Bill 1 Disbursement | PriorServicer | None | NULL |
| 3/13/2018 | 3/8/2018 | 3/1/2013 | 3336.75 | 0 | 0 | 0 | 810821.05 | 5362.01 | 33400.23 Unapplied Payment | PriorServicer | None | NULL |
| 2/19/2018 | 2/19/2018 | 3/1/2013 | -43 | 0 | 0 | 0 | 810821.05 | 5362.01 | 30063.48 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 2/19/2018 | 2/19/2018 | 3/1/2013 | -43 | 0 | 0 | 0 | 810821.05 | 5362.01 | 30063.48 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 2/19/2018 | 2/19/2018 | 3/1/2013 | -21.5 | 0 | 0 | 0 | 810821.05 | 5362.01 | 30063.48 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 2/19/2018 | 2/19/2018 | 3/1/2013 | -43 | 0 | 0 | 0 | 810821.05 | 5362.01 | 30063.48 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 2/19/2018 | 2/19/2018 | 3/1/2013 | -43 | 0 | 0 | 0 | 810821.05 | 5362.01 | 30063.48 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 2/19/2018 | 2/19/2018 | 3/1/2013 | -86 | 0 | 0 | 0 | 810821.05 | 5362.01 | 30063.48 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 2/19/2018 | 2/19/2018 | 3/1/2013 | -43 | 0 | 0 | 0 | 810821.05 | 5362.01 | 30063.48 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 2/19/2018 | 2/19/2018 | 3/1/2013 | -43 | 0 | 0 | 0 | 810821.05 | 5362.01 | 30063.48 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 2/13/2018 | 2/12/2018 | 3/1/2013 | 3336.75 | 0 | 0 | 0 | 810821.05 | 5362.01 | 30063.48 Unapplied Payment | PriorServicer | None | NULL |
| 1/29/2018 | 1/29/2018 | 3/1/2013 | -21.5 | 0 | 0 | 0 | 810821.05 | 5362.01 | 26726.73 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 1/29/2018 | 1/29/2018 | 3/1/2013 | -21.5 | 0 | 0 | 0 | 810821.05 | 5362.01 | 26726.73 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 1/29/2018 | 1/29/2018 | 3/1/2013 | -21.5 | 0 | 0 | 0 | 810821.05 | 5362.01 | 26726.73 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 1/29/2018 | 1/29/2018 | 3/1/2013 | -21.5 | 0 | 0 | 0 | 810821.05 | 5362.01 | 26726.73 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 1/24/2018 | 1/23/2018 | 3/1/2013 | 3336.75 | 0 | 0 | 0 | 810821.05 | 5362.01 | 26726.73 Unapplied Payment | PriorServicer | None | NULL |
| 1/22/2018 | 1/22/2018 | 3/1/2013 | 3336 | 0 | 0 | 0 | 810821.05 | 5362.01 | 23389.98 Unapplied Payment | PriorServicer | None | NULL |
| 12/21/2017 | 12/21/2017 | 2/1/2013 | -100 | 0 | 0 | 0 | 810821.05 | 5362.01 | 20053.98 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 12/20/2017 | 12/18/2017 | 2/1/2013 | -0.75 | 0 | 0 | 0 | 810821.05 | 4896.92 | 20053.98 Unapplied Payment | PriorServicer | None | NULL |
| 12/20/2017 | 12/18/2017 | 2/1/2013 | 3336.75 | 0 | 2871.66 | 465.09 | 810821.05 | 5362.01 | 20053.98 Regular Payment | PriorServicer | None | NULL |
| 12/19/2017 | 12/19/2017 | 1/1/2013 | -21.5 | 0 | 0 | 0 | 810821.05 | 4896.92 | 20054.73 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 12/1/2017 | 12/1/2017 | 1/1/2013 | -300 | 0 | 0 | 0 | 810821.05 | 4896.92 | 20054.73 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 11/30/2017 | 11/30/2017 | 1/1/2013 | -43 | 0 | 0 | 0 | 810821.05 | 4896.92 | 20054.73 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 11/30/2017 | 11/30/2017 | 1/1/2013 | -43 | 0 | 0 | 0 | 810821.05 | 4896.92 | 20054.73 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 11/22/2017 | 11/20/2017 | 1/1/2013 | -0.75 | 0 | 0 | 0 | 810821.05 | 4431.83 | 20054.73 Unapplied Payment | PriorServicer | None | NULL |
| 11/22/2017 | 11/20/2017 | 1/1/2013 | 3336.75 | 0 | 2871.66 | 465.09 | 810821.05 | 4896.92 | 20054.73 Regular Payment | PriorServicer | None | NULL |
| 11/9/2017 | 11/9/2017 | 11/1/2017 | -5362.01 | 0 | 0 | -5362 | 810821.05 | 4431.83 | 20055.48 Tax Bill 1 Disbursement | PriorServicer | None | NULL |
| 10/30/2017 | 10/30/2017 | 12/1/2012 | -50 | 0 | 0 | 0 | 810821.05 | 9793.84 | 20055.48 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 10/30/2017 | 10/30/2017 | 12/1/2012 | -193.5 | 0 | 0 | 0 | 810821.05 | 9793.84 | 20055.48 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 10/30/2017 | 10/30/2017 | 12/1/2012 | -129 | 0 | 0 | 0 | 810821.05 | 9793.84 | 20055.48 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 10/30/2017 | 10/30/2017 | 12/1/2012 | -43 | 0 | 0 | 0 | 810821.05 | 9793.84 | 20055.48 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 10/30/2017 | 10/30/2017 | 12/1/2012 | -86 | 0 | 0 | 0 | 810821.05 | 9793.84 | 20055.48 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 10/30/2017 | 10/30/2017 | 12/1/2012 | -43 | 0 | 0 | 0 | 810821.05 | 9793.84 | 20055.48 Legal Fee Assessment | PriorServicer | None | Attorney Cost |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/30/2017 | 10/30/2017 | 12/1/2012 | -64.5 | 0 | 0 | 0 | 810821.05 | 9793.84 | 20055.48 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 10/23/2017 | 10/13/2017 | 11/1/2012 | -0.75 | 0 | 0 | 0 | 810821.05 | 8863.66 | 20056.23 Unapplied Payment | PriorServicer | None | NULL |
| 10/23/2017 | 10/13/2017 | 11/1/2012 | 3336.75 | 0 | 2871.66 | 465.09 | 810821.05 | 9328.75 | 20056.23 Regular Payment | PriorServicer | None | NULL |
| 10/23/2017 | 10/13/2017 | 12/1/2012 | -0.75 | 0 | 0 | 0 | 810821.05 | 9328.75 | 20055.48 Unapplied Payment | PriorServicer | None | NULL |
| 10/23/2017 | 10/13/2017 | 12/1/2012 | 3336.75 | 0 | 2871.66 | 465.09 | 810821.05 | 9793.84 | 20055.48 Regular Payment | PriorServicer | None | NULL |
| 9/27/2017 | 9/27/2017 | 10/1/2012 | -129 | 0 | 0 | 0 | 810821.05 | 8863.66 | 20056.98 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 9/27/2017 | 9/27/2017 | 10/1/2012 | -43 | 0 | 0 | 0 | 810821.05 | 8863.66 | 20056.98 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 8/29/2017 | 8/22/2017 | 10/1/2012 | 421.56 | 0 | 0 | 0 | 810821.05 | 8820.88 | 20056.98 Unapplied Payment | PriorServicer | None | NULL |
| 8/29/2017 | 8/22/2017 | 10/1/2012 | 2914.44 | 0 | 2871.66 | 42.78 | 810821.05 | 8863.66 | 20056.98 Regular Payment | PriorServicer | None | NULL |
| 8/14/2017 | 8/14/2017 | 9/1/2012 | -43 | 0 | 0 | 0 | 810821.05 | 8820.88 | 19635.42 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 8/14/2017 | 8/14/2017 | 9/1/2012 | -64.5 | 0 | 0 | 0 | 810821.05 | 8820.88 | 19635.42 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 8/14/2017 | 8/14/2017 | 9/1/2012 | -172 | 0 | 0 | 0 | 810821.05 | 8820.88 | 19635.42 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 8/14/2017 | 8/14/2017 | 9/1/2012 | -21.5 | 0 | 0 | 0 | 810821.05 | 8820.88 | 19635.42 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 8/14/2017 | 8/14/2017 | 9/1/2012 | -43 | 0 | 0 | 0 | 810821.05 | 8820.88 | 19635.42 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 8/14/2017 | 8/14/2017 | 9/1/2012 | -43 | 0 | 0 | 0 | 810821.05 | 8820.88 | 19635.42 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 7/31/2017 | 7/31/2017 | 9/1/2012 | -260 | 0 | 0 | 0 | 810821.05 | 8820.88 | 19635.42 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 7/24/2017 | 7/21/2017 | 9/1/2012 | 422.31 | 0 | 0 | 0 | 810821.05 | 8778.1 | 19635.42 Unapplied Payment | PriorServicer | None | NULL |
| 7/24/2017 | 7/21/2017 | 9/1/2012 | 2914.44 | 0 | 2871.66 | 42.78 | 810821.05 | 8820.88 | 19635.42 Regular Payment | PriorServicer | None | NULL |
| 6/26/2017 | 6/15/2017 | 8/1/2012 | 422.31 | 0 | 0 | 0 | 810821.05 | 8735.32 | 19213.11 Unapplied Payment | PriorServicer | None | NULL |
| 6/26/2017 | 6/15/2017 | 8/1/2012 | 2914.44 | 0 | 2871.66 | 42.78 | 810821.05 | 8778.1 | 19213.11 Regular Payment | PriorServicer | None | NULL |
| 6/20/2017 | 6/20/2017 | 7/1/2012 | -43 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 6/20/2017 | 6/20/2017 | 7/1/2012 | -21.5 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 6/20/2017 | 6/20/2017 | 7/1/2012 | -43 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 6/20/2017 | 6/20/2017 | 7/1/2012 | -43 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 6/20/2017 | 6/20/2017 | 7/1/2012 | -43 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 6/20/2017 | 6/20/2017 | 7/1/2012 | -21.5 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 6/20/2017 | 6/20/2017 | 7/1/2012 | -21.5 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 6/20/2017 | 6/20/2017 | 7/1/2012 | -86 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 6/20/2017 | 6/20/2017 | 7/1/2012 | -64.5 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 6/20/2017 | 6/20/2017 | 7/1/2012 | -21.5 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 6/20/2017 | 6/20/2017 | 7/1/2012 | -43 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 6/20/2017 | 6/20/2017 | 7/1/2012 | -43 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 6/20/2017 | 6/20/2017 | 7/1/2012 | -21.5 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 6/20/2017 | 6/20/2017 | 7/1/2012 | -21.5 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/25/2017 | 5/25/2017 | 7/1/2012 | -43 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 5/25/2017 | 5/25/2017 | 7/1/2012 | -86 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 5/25/2017 | 5/25/2017 | 7/1/2012 | -43 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 5/25/2017 | 5/25/2017 | 7/1/2012 | -43 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 5/25/2017 | 5/25/2017 | 7/1/2012 | -21.5 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 5/25/2017 | 5/25/2017 | 7/1/2012 | -43 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 5/25/2017 | 5/25/2017 | 7/1/2012 | -43 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 5/25/2017 | 5/25/2017 | 7/1/2012 | -43 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 5/25/2017 | 5/25/2017 | 7/1/2012 | -86 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 5/25/2017 | 5/25/2017 | 7/1/2012 | -50 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 5/3/2017 | 5/3/2017 | 7/1/2012 | -43 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 5/3/2017 | 5/3/2017 | 7/1/2012 | -21.5 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 5/3/2017 | 5/3/2017 | 7/1/2012 | -43 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 5/3/2017 | 5/3/2017 | 7/1/2012 | -21.5 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 5/3/2017 | 5/3/2017 | 7/1/2012 | -43 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 4/26/2017 | 4/26/2017 | 7/1/2012 | -650 | 0 | 0 | 0 | 810821.05 | 8735.32 | 18790.8 Legal Fee Assessment | PriorServicer | None | BK Costs |
| 4/18/2017 | 4/18/2017 | 7/1/2012 | 422.31 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18790.8 Unapplied Payment | PriorServicer | None | NULL |
| 4/18/2017 | 4/18/2017 | 7/1/2012 | 2914.44 | 0 | 2871.66 | 42.78 | 810821.05 | 8735.32 | 18790.8 Regular Payment | PriorServicer | None | NULL |
| 3/29/2017 | 3/29/2017 | 11/1/2016 | -17.4 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 3/28/2017 | 3/28/2017 | 11/1/2016 | -100 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 3/28/2017 | 3/28/2017 | 11/1/2016 | -100 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 3/28/2017 | 3/28/2017 | 11/1/2016 | -100 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 3/28/2017 | 3/28/2017 | 11/1/2016 | -100 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 3/28/2017 | 3/28/2017 | 11/1/2016 | -21.35 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | FC Costs |
| 3/28/2017 | 3/28/2017 | 11/1/2016 | -21.15 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | FC Costs |
| 3/28/2017 | 3/28/2017 | 11/1/2016 | -21.15 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | FC Costs |
| 3/28/2017 | 3/28/2017 | 11/1/2016 | -21.15 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | FC Costs |
| 3/28/2017 | 3/28/2017 | 11/1/2016 | -21.15 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | FC Costs |
| 3/27/2017 | 3/27/2017 | 11/1/2016 | -64.5 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 3/27/2017 | 3/27/2017 | 11/1/2016 | -43 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 3/6/2017 | 3/6/2017 | 11/1/2016 | -125 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 2/18/2017 | 2/18/2017 | 11/1/2016 | -64.5 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 2/18/2017 | 2/18/2017 | 11/1/2016 | -43 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 2/18/2017 | 2/18/2017 | 11/1/2016 | -21.5 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/18/2017 | 2/18/2017 | 11/1/2016 | -43 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 2/18/2017 | 2/18/2017 | 11/1/2016 | -21.5 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 2/18/2017 | 2/18/2017 | 11/1/2016 | -795.5 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 2/18/2017 | 2/18/2017 | 11/1/2016 | -43 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 2/18/2017 | 2/18/2017 | 11/1/2016 | -64.5 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 2/18/2017 | 2/18/2017 | 11/1/2016 | -50 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 1/27/2017 | 1/27/2017 | 11/1/2016 | -350 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 1/18/2017 | 1/18/2017 | 11/1/2016 | -850 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 1/18/2017 | 1/18/2017 | 11/1/2016 | -181 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Legal Fee Assessment | PriorServicer | None | BK Costs |
| 11/29/2016 | 11/29/2016 | 11/1/2016 | 350 | 0 | 0 | 0 | 810821.05 | 8692.54 | 18368.49 Other Fee Assessment | PriorServicer | None | Prior Servicer Cost |
| 11/15/2016 | 11/15/2016 | 11/1/2016 | -5166.16 | 0 | 0 | -5166.2 | 810821.05 | 8692.54 | 18368.49 Tax Bill 1 Disbursement | PriorServicer | None | NULL |
| 9/20/2016 | 9/20/2016 | 3/1/2016 | -400 | 0 | 0 | 0 | 810821.05 | 13858.7 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 9/20/2016 | 9/20/2016 | 3/1/2016 | -84.6 | 0 | 0 | 0 | 810821.05 | 13858.7 | 18368.49 Legal Fee Assessment | PriorServicer | None | FC Costs |
| 8/2/2016 | 8/2/2016 | 3/1/2016 | -350 | 0 | 0 | 0 | 810821.05 | 13858.7 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 8/1/2016 | 8/1/2016 | 3/1/2016 | 2.5 | 0 | 0 | 0 | 810821.05 | 13858.7 | 18368.49 Legal Fee Assessment | PriorServicer | None | BK Costs |
| 7/23/2016 | 7/23/2016 | 3/1/2016 | -300 | 0 | 0 | 0 | 810821.05 | 13858.7 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 6/14/2016 | 6/14/2016 | 3/1/2016 | -100 | 0 | 0 | 0 | 810821.05 | 13858.7 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 6/14/2016 | 6/14/2016 | 3/1/2016 | -21.14 | 0 | 0 | 0 | 810821.05 | 13858.7 | 18368.49 Legal Fee Assessment | PriorServicer | None | FC Costs |
| 6/3/2016 | 6/3/2016 | 3/1/2016 | -21.14 | 0 | 0 | 0 | 810821.05 | 13858.7 | 18368.49 Legal Fee Assessment | PriorServicer | None | FC Costs |
| 5/4/2016 | 5/4/2016 | 3/1/2016 | -427.5 | 0 | 0 | 0 | 810821.05 | 13858.7 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 5/4/2016 | 5/4/2016 | 3/1/2016 | -4786.11 | 0 | 0 | 0 | 810821.05 | 13858.7 | 18368.49 Legal Fee Assessment | PriorServicer | None | FC Costs |
| 5/4/2016 | 5/4/2016 | 3/1/2016 | -27 | 0 | 0 | 0 | 810821.05 | 13858.7 | 18368.49 Legal Fee Assessment | PriorServicer | None | FC Costs |
| 3/17/2016 | 3/17/2016 | 3/1/2016 | -12.5 | 0 | 0 | 0 | 810821.05 | 13858.7 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 3/12/2016 | 3/12/2016 | 3/1/2016 | -4817.6 | 0 | 0 | -4817.6 | 810821.05 | 13858.7 | 18368.49 Tax Bill 1 Disbursement | PriorServicer | None | NULL |
| 2/24/2016 | 2/24/2016 | 7/1/2012 | -11.5 | 0 | 0 | 0 | 810821.05 | 18676.3 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 1/25/2016 | 1/25/2016 | 7/1/2012 | -11.5 | 0 | 0 | 0 | 810821.05 | 18676.3 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 1/7/2016 | 1/7/2016 | 7/1/2012 | -34.01 | 0 | 0 | 0 | 810821.05 | 18676.3 | 18368.49 Legal Fee Assessment | PriorServicer | None | FC Costs |
| 1/7/2016 | 1/7/2016 | 7/1/2012 | -11.5 | 0 | 0 | 0 | 810821.05 | 18676.3 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 12/23/2015 | 12/23/2015 | 7/1/2012 | -427.5 | 0 | 0 | 0 | 810821.05 | 18676.3 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 12/23/2015 | 12/23/2015 | 7/1/2012 | -1040.71 | 0 | 0 | 0 | 810821.05 | 18676.3 | 18368.49 Legal Fee Assessment | PriorServicer | None | FC Costs |
| 12/23/2015 | 12/23/2015 | 7/1/2012 | -51 | 0 | 0 | 0 | 810821.05 | 18676.3 | 18368.49 Legal Fee Assessment | PriorServicer | None | FC Costs |
| 12/2/2015 | 12/2/2015 | 7/1/2012 | -11.5 | 0 | 0 | 0 | 810821.05 | 18676.3 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 11/19/2015 | 11/19/2015 | 7/1/2012 | -11.5 | 0 | 0 | 0 | 810821.05 | 18676.3 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 11/16/2015 | 11/16/2015 | 7/1/2012 | -0.11 | 0 | 0 | 0 | 810821.05 | 18676.3 | 18368.49 Late Charge Assess | PriorServicer | None | NULL |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/9/2015 | 11/9/2015 | 11/1/2015 | -4817.6 | 0 | 0 | -4817.6 | 810821.05 | 18676.3 | 18368.49 Tax Bill 1 Disbursement | PriorServicer | None | NULL |
| 10/17/2015 | 10/17/2015 | 7/1/2012 | -0.09 | 0 | 0 | 0 | 810821.05 | 23493.9 | 18368.49 Late Charge Assess | PriorServicer | None | NULL |
| 10/1/2015 | 10/1/2015 | 7/1/2012 | -11.5 | 0 | 0 | 0 | 810821.05 | 23493.9 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 9/16/2015 | 9/16/2015 | 7/1/2012 | -0.09 | 0 | 0 | 0 | 810821.05 | 23493.9 | 18368.49 Late Charge Assess | PriorServicer | None | NULL |
| 8/24/2015 | 8/24/2015 | 7/1/2012 | -11.5 | 0 | 0 | 0 | 810821.05 | 23493.9 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 8/17/2015 | 8/17/2015 | 7/1/2012 | -0.09 | 0 | 0 | 0 | 810821.05 | 23493.9 | 18368.49 Late Charge Assess | PriorServicer | None | NULL |
| 8/6/2015 | 8/6/2015 | 7/1/2012 | -11.5 | 0 | 0 | 0 | 810821.05 | 23493.9 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 7/16/2015 | 7/16/2015 | 7/1/2012 | -0.09 | 0 | 0 | 0 | 810821.05 | 23493.9 | 18368.49 Late Charge Assess | PriorServicer | None | NULL |
| 7/6/2015 | 7/6/2015 | 7/1/2012 | -112.5 | 0 | 0 | 0 | 810821.05 | 23493.9 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 6/26/2015 | 6/26/2015 | 7/1/2012 | -11.5 | 0 | 0 | 0 | 810821.05 | 23493.9 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 6/16/2015 | 6/16/2015 | 7/1/2012 | -0.09 | 0 | 0 | 0 | 810821.05 | 23493.9 | 18368.49 Late Charge Assess | PriorServicer | None | NULL |
| 6/10/2015 | 6/10/2015 | 7/1/2012 | -279 | 0 | 0 | 0 | 810821.05 | 23493.9 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 6/10/2015 | 6/10/2015 | 7/1/2012 | -64.87 | 0 | 0 | 0 | 810821.05 | 23493.9 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 6/10/2015 | 6/10/2015 | 7/1/2012 | -5215 | 0 | 0 | 0 | 810821.05 | 23493.9 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 6/9/2015 | 6/9/2015 | 7/1/2012 | -2.5 | 0 | 0 | 0 | 810821.05 | 23493.9 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 6/3/2015 | 6/3/2015 | 7/1/2012 | -112.5 | 0 | 0 | 0 | 810821.05 | 23493.9 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 6/2/2015 | 6/2/2015 | 7/1/2012 | -157.5 | 0 | 0 | 0 | 810821.05 | 23493.9 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 5/16/2015 | 5/16/2015 | 7/1/2012 | -0.09 | 0 | 0 | 0 | 810821.05 | 23493.9 | 18368.49 Late Charge Assess | PriorServicer | None | NULL |
| 5/7/2015 | 5/7/2015 | 7/1/2012 | -11.5 | 0 | 0 | 0 | 810821.05 | 23493.9 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 4/16/2015 | 4/16/2015 | 7/1/2012 | -0.09 | 0 | 0 | 0 | 810821.05 | 23493.9 | 18368.49 Late Charge Assess | PriorServicer | None | NULL |
| 4/11/2015 | 4/11/2015 | 3/1/2015 | -11.5 | 0 | 0 | 0 | 810821.05 | 23493.9 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 4/6/2015 | 4/6/2015 | 3/1/2015 | -4650.23 | 0 | 0 | -4650.2 | 810821.05 | 23493.9 | 18368.49 Tax Bill 1 Disbursement | PriorServicer | None | NULL |
| 3/16/2015 | 3/16/2015 | 7/1/2012 | -0.09 | 0 | 0 | 0 | 810821.05 | 28144.13 | 18368.49 Late Charge Assess | PriorServicer | None | NULL |
| 3/5/2015 | 3/5/2015 | 7/1/2012 | -11.5 | 0 | 0 | 0 | 810821.05 | 28144.13 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 2/16/2015 | 2/16/2015 | 7/1/2012 | -0.09 | 0 | 0 | 0 | 810821.05 | 28144.13 | 18368.49 Late Charge Assess | PriorServicer | None | NULL |
| 1/28/2015 | 1/28/2015 | 7/1/2012 | -427.5 | 0 | 0 | 0 | 810821.05 | 28144.13 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 1/17/2015 | 1/17/2015 | 7/1/2012 | -0.09 | 0 | 0 | 0 | 810821.05 | 28144.13 | 18368.49 Late Charge Assess | PriorServicer | None | NULL |
| 1/14/2015 | 1/14/2015 | 7/1/2012 | -11.5 | 0 | 0 | 0 | 810821.05 | 28144.13 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 1/14/2015 | 1/14/2015 | 7/1/2012 | -11.5 | 0 | 0 | 0 | 810821.05 | 28144.13 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 1/8/2015 | 1/8/2015 | 7/1/2012 | -35.35 | 0 | 0 | 0 | 810821.05 | 28144.13 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 1/8/2015 | 1/8/2015 | 7/1/2012 | -4905 | 0 | 0 | 0 | 810821.05 | 28144.13 | 18368.49 Legal Fee Assessment | PriorServicer | None | Attorney Cost |
| 12/20/2014 | 12/20/2014 | 7/1/2012 | -11.5 | 0 | 0 | 0 | 810821.05 | 28144.13 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 12/16/2014 | 12/16/2014 | 7/1/2012 | -0.14 | 0 | 0 | 0 | 810821.05 | 28144.13 | 18368.49 Late Charge Assess | PriorServicer | None | NULL |
| 12/3/2014 | 12/3/2014 | 11/1/2014 | -4650.23 | 0 | 0 | -4650.2 | 810821.05 | 28144.13 | 18368.49 Tax Bill 1 Disbursement | PriorServicer | None | NULL |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/17/2014 | 11/17/2014 | 7/1/2012 | -0.14 | 0 | 0 | 0 | 810821.05 | 32794.36 | 18368.49 Late Charge Assess | PriorServicer | None | NULL |
| 11/12/2014 | 11/12/2014 | 7/1/2012 | -11.5 | 0 | 0 | 0 | 810821.05 | 32794.36 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 10/16/2014 | 10/16/2014 | 7/1/2012 | -0.14 | 0 | 0 | 0 | 810821.05 | 32794.36 | 18368.49 Late Charge Assess | PriorServicer | None | NULL |
| 10/1/2014 | 10/1/2014 | 7/1/2012 | -11.5 | 0 | 0 | 0 | 810821.05 | 32794.36 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 8/21/2014 | 8/21/2014 | 7/1/2012 | -11.5 | 0 | 0 | 0 | 810821.05 | 32794.36 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 7/24/2014 | 7/24/2014 | 7/1/2012 | -11.5 | 0 | 0 | 0 | 810821.05 | 32794.36 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 7/24/2014 | 7/24/2014 | 7/1/2012 | 11.5 | 0 | 0 | 0 | 810821.05 | 32794.36 | 18368.49 Other Fee Assessment | PriorServicer | None | Prior Servicer Cost |
| 7/7/2014 | 7/7/2014 | 7/1/2012 | -11.5 | 0 | 0 | 0 | 810821.05 | 32794.36 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 7/3/2014 | 7/3/2014 | 7/1/2012 | -11.5 | 0 | 0 | 0 | 810821.05 | 32794.36 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 6/23/2014 | 6/23/2014 | 7/1/2012 | 155 | 0 | 0 | 0 | 810821.05 | 32794.36 | 18368.49 Other Fee Assessment | PriorServicer | None | Prior Servicer Cost |
| 6/12/2014 | 6/12/2014 | 7/1/2012 | -11.5 | 0 | 0 | 0 | 810821.05 | 32794.36 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 4/28/2014 | 4/28/2014 | 7/1/2012 | -11.5 | 0 | 0 | 0 | 810821.05 | 32794.36 | 18368.49 Other Fee Assessment | PriorServicer | None | Property Inspection |
| 4/17/2014 | 4/17/2014 | 7/1/2012 | 4410.29 | 0 | 0 | 4410.29 | 810821.05 | 28364.07 | 18368.49 Tax Refund No Report | PriorServicer | None | NULL |
| 4/17/2014 | 4/17/2014 | 7/1/2012 | 4430.29 | 0 | 0 | 4430.29 | 810821.05 | 32794.36 | 18368.49 Tax Refund No Report | PriorServicer | None | NULL |
| 3/20/2014 | 3/20/2014 | 3/1/2014 | -3099.42 | 0 | 0 | -3099.4 | 810821.05 | 23953.78 | 18368.49 Tax Bill 1 Disbursement | PriorServicer | None | NULL |
| 3/18/2014 | 3/18/2014 | 11/1/2013 | -4410.29 | 0 | 0 | -4410.3 | 810821.05 | 31483.49 | 18368.49 Tax Bill 1 Disbursement | PriorServicer | None | NULL |
| 3/18/2014 | 3/18/2014 | 3/1/2013 | -4430.29 | 0 | 0 | -4430.3 | 810821.05 | 27053.2 | 18368.49 Tax Bill 1 Disbursement | PriorServicer | None | NULL |
| 2/7/2014 | 2/7/2014 | 11/1/2013 | -305 | 0 | 0 | 0 | 810821.05 | 35893.78 | 18368.49 Other Fee Assessment | PriorServicer | None | Prior Servicer Cost |

Borrower: NOBLE          Telephone:          SSN:

| Effective Date | Transaction Date | Due Date | Transaction Description | Batch Desc | Sub Code | Batch Id | Trans. Amt | Principal Amount | Principal Balance | Interest Amount | Unapplied Amount | Unapplied Balance | Escrow Amount | Escrow Balance | Late Charge Amt | Late Charge Balance | Assistance Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/30/2019 | 4/30/2019 | 3/1/2015 | New Loan | | 0 | 0 | $.00 | $810,821.05 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | $.00 | $.00 | $.00 | $.00 |
| 5/2/2019 | 5/2/2019 | 3/1/2015 | Escrow Adjustment | | 0 | 0 | ($49,890.50) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | ($49,890.50) | ($49,890.50) | $.00 | $.00 | $.00 |
| 5/3/2019 | 5/3/2019 | 3/1/2015 | 3rd PPS Corp Advance Assessment | | 212 | 0 | ($342.95) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($49,890.50) | $.00 | $.00 | $.00 |
| 5/3/2019 | 5/3/2019 | 3/1/2015 | Prior Serv Corp Adv Assessment | | 96 | 0 | ($29,175.28) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($49,890.50) | $.00 | $.00 | $.00 |
| 5/3/2019 | 5/3/2019 | 3/1/2015 | Prior Serv Late Chrg Assessment | | 95 | 0 | ($1.43) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($49,890.50) | $.00 | $.00 | $.00 |
| 4/30/2019 | 5/10/2019 | 3/1/2015 | Unapplied Payment | 3000-47-BB | 0 | 28459 | $1,867.75 | $.00 | $810,821.05 | $.00 | $1,867.75 | $1,867.75 | $.00 | ($49,890.50) | $.00 | $.00 | $.00 |
| 5/17/2019 | 5/17/2019 | 3/1/2015 | Unapplied Payment | 3000-41548 | 0 | 29396 | $3,336.87 | $.00 | $810,821.05 | $.00 | $3,336.87 | $5,204.62 | $.00 | ($49,890.50) | $.00 | $.00 | $.00 |
| 5/21/2019 | 5/21/2019 | 3/1/2015 | Unapplied Payment Reversal | 45-JW | 0 | 29818 | ($4,682.76) | $.00 | $810,821.05 | $.00 | ($4,682.76) | $521.86 | $.00 | ($49,890.50) | $.00 | $.00 | $.00 |
| 5/17/2019 | 5/21/2019 | 3/1/2015 | Regular Payment | 45-JW | 0 | 29818 | $4,682.76 | $.00 | $810,821.05 | $1,858.13 | $.00 | $521.86 | $2,824.63 | ($47,065.87) | $.00 | $.00 | $.00 |
| 6/11/2019 | 6/11/2019 | 4/1/2015 | Unapplied Payment | EKA Dep (3000-EK01-JW) | 0 | 32807 | $3,336.75 | $.00 | $810,821.05 | $.00 | $3,336.75 | $3,858.61 | $.00 | ($47,065.87) | $.00 | $.00 | $.00 |
| 6/17/2019 | 7/1/2019 | 6/1/2019 | Late Charge Assessment | | 0 | 0 | ($225.11) | $.00 | $810,821.05 | $.00 | $.00 | $3,858.61 | $.00 | ($47,065.87) | ($225.11) | $225.11 | $.00 |
| 7/12/2019 | 7/12/2019 | 4/1/2015 | Unapplied Payment | EKA Dep (3000-EK01-BC) | 0 | 35866 | $3,336.75 | $.00 | $810,821.05 | $.00 | $3,336.75 | $7,195.36 | $.00 | ($47,065.87) | $.00 | $225.11 | $.00 |
| 7/12/2019 | 7/15/2019 | 4/1/2015 | Unapplied Payment Reversal | 45-PA | 0 | 36044 | ($4,682.76) | $.00 | $810,821.05 | $.00 | ($4,682.76) | $2,512.60 | $.00 | ($47,065.87) | $.00 | $225.11 | $.00 |
| 7/12/2019 | 7/15/2019 | 4/1/2015 | Regular Payment | 45-PA | 0 | 36045 | $4,682.76 | $.00 | $810,821.05 | $1,858.13 | $.00 | $2,512.60 | $2,824.63 | ($44,241.24) | $.00 | $225.11 | $.00 |
| 8/2/2019 | 8/2/2019 | 5/1/2019 | Escrow Disbursement | FPI Escrow | 0 | 38147 | ($3,084.20) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | ($3,084.20) | ($47,325.44) | $.00 | $225.11 | $.00 |
| 8/12/2019 | 8/13/2019 | 5/1/2019 | Unapplied Payment | EKA Dep (3000-EK01-PA) | 0 | 39125 | $3,336.75 | $.00 | $810,821.05 | $.00 | $3,336.75 | $5,849.35 | $.00 | ($47,325.44) | $.00 | $225.11 | $.00 |
| 8/12/2019 | 8/14/2019 | 5/1/2019 | Unapplied Payment Reversal | 45-BC | 0 | 39331 | ($4,682.76) | $.00 | $810,821.05 | $.00 | ($4,682.76) | $1,166.59 | $.00 | ($47,325.44) | $.00 | $225.11 | $.00 |

Contains Customer Private Information - handle securely.

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/12/2019 | 8/14/2019 | 5/1/2015 | Regular Payment | 45-BC | 0 | 39332 | $4,682.76 | $.00 | $810,821.05 | $1,858.13 | $.00 | $1,166.59 | $2,824.63 | ($44,500.81) | $.00 | $225.11 | $.00 |
| 8/16/2019 | 8/16/2019 | 5/1/2015 | Regular Payment Reversal | 46-BB | 0 | 39517 | ($4,682.76) | $.00 | $810,821.05 | ($1,858.13) | $.00 | $1,166.59 | ($2,824.63) | ($47,325.44) | $.00 | $225.11 | $.00 |
| 8/16/2019 | 8/16/2019 | 5/1/2015 | Unapplied Payment | 46-BB | 0 | 39517 | $4,682.76 | $.00 | $810,821.05 | $.00 | $4,682.76 | $5,849.35 | $.00 | ($47,325.44) | $.00 | $225.11 | $.00 |
| 8/16/2019 | 8/16/2019 | 5/1/2015 | Unapplied Payment Reversal | 3000-BOT REJECT-BB | 0 | 39553 | ($3,336.75) | $.00 | $810,821.05 | $.00 | ($3,336.75) | $2,512.60 | $.00 | ($47,325.44) | $.00 | $225.11 | $.00 |
| 8/16/2019 | 8/16/2019 | 5/1/2015 | NSF Fee Assessment | 3000-BOT REJECT-BB | 0 | 39553 | ($25.00) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | $.00 | ($47,325.44) | $.00 | $225.11 | $.00 |
| 8/17/2019 | 8/17/2019 | 8/1/2019 | Late Charge Assessment | | 0 | 0 | ($225.11) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | $.00 | ($47,325.44) | ($225.11) | $450.22 | $.00 |
| 9/4/2019 | 9/4/2019 | 5/1/2015 | Escrow Disbursement | FPI Escrow | 0 | 41641 | ($1,016.77) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | ($1,016.77) | ($48,342.21) | $.00 | $450.22 | $.00 |
| 9/17/2019 | 9/17/2019 | 9/1/2019 | Late Charge Assessment | | 0 | 0 | ($225.11) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | $.00 | ($48,342.21) | ($225.11) | $675.33 | $.00 |
| 9/19/2019 | 9/19/2019 | 5/1/2015 | Legal Fee Assessment | | 1 | 0 | ($990.00) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | $.00 | ($48,342.21) | $.00 | $675.33 | $.00 |
| 10/2/2019 | 10/2/2019 | 5/1/2015 | Forced Place Insur Disbursement | FPI Escrow | 12 | 44818 | ($1,016.77) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | ($1,016.77) | ($49,358.98) | $.00 | $675.33 | $.00 |
| 10/14/2019 | 10/14/2019 | 5/1/2015 | Legal Fee Assessment | | 1 | 0 | ($192.50) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | $.00 | ($49,358.98) | $.00 | $675.33 | $.00 |
| 10/17/2019 | 10/17/2019 | 10/1/2019 | Late Charge Assessment | | 0 | 0 | ($225.11) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | $.00 | ($49,358.98) | ($225.11) | $900.44 | $.00 |
| 11/5/2019 | 11/5/2019 | 5/1/2015 | Forced Place Insur Disbursement | FPI Escrow | 12 | 48487 | ($1,016.77) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | ($1,016.77) | ($50,375.75) | $.00 | $900.44 | $.00 |
| 11/7/2019 | 11/7/2019 | 12/10/2019 | County Tax Disbursement | propertytax - 110719 - AJ | 30 | 48742 | ($5,315.20) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | ($5,315.20) | ($55,690.95) | $.00 | $900.44 | $.00 |
| 11/17/2019 | 11/19/2019 | 11/1/2019 | Late Charge Assessment | | 0 | 0 | ($201.73) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | $.00 | ($55,690.95) | ($201.73) | $1,102.17 | $.00 |
| 12/5/2019 | 12/5/2019 | 5/1/2015 | Forced Place Insur Disbursement | FPI Escrow | 12 | 51847 | ($1,016.77) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | ($1,016.77) | ($56,707.72) | $.00 | $1,102.17 | $.00 |
| 12/17/2019 | 12/17/2019 | 12/1/2019 | Late Charge Assessment | | 0 | 0 | ($201.73) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | $.00 | ($56,707.72) | ($201.73) | $1,303.90 | $.00 |
| 1/3/2020 | 1/3/2020 | 5/1/2015 | Forced Place Insur Disbursement | FPI Escrow | 12 | 55468 | ($1,016.77) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | ($1,016.77) | ($57,724.49) | $.00 | $1,303.90 | $.00 |
| 1/7/2020 | 1/7/2020 | 5/1/2015 | Legal Fee Assessment | | 1 | 0 | ($330.00) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | $.00 | ($57,724.49) | $.00 | $1,303.90 | $.00 |

## Loan History - General

| | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/17/2020 | 1/17/2020 | 1/1/2020 | Late Charge Assessment | | 0 | 0 | ($201.73) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | $.00 | ($57,724.49) | ($201.73) | $1,505.63 | $.00 |
| 2/4/2020 | 2/4/2020 | 5/1/2015 | Forced Place Insur Disbursement | FPI Escrow | 12 | 59449 | ($1,016.77) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | ($1,016.77) | ($58,741.26) | $.00 | $1,505.63 | $.00 |
| 2/17/2020 | 2/18/2020 | 2/1/2020 | Late Charge Assessment | | 0 | 0 | ($201.73) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | $.00 | ($58,741.26) | ($201.73) | $1,707.36 | $.00 |
| 3/3/2020 | 3/3/2020 | 5/1/2015 | Forced Place Insur Disbursement | FPI Escrow | 12 | 62857 | ($1,016.77) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | ($1,016.77) | ($59,758.03) | $.00 | $1,707.36 | $.00 |
| 3/11/2020 | 3/11/2020 | 4/10/2020 | County Tax Disbursement | propertytax - 03112020 - AJ | 30 | 63917 | ($5,315.20) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | ($5,315.20) | ($65,073.23) | $.00 | $1,707.36 | $.00 |
| 3/17/2020 | 3/17/2020 | 3/1/2020 | Late Charge Assessment | | 0 | 0 | ($201.73) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | $.00 | ($65,073.23) | ($201.73) | $1,909.09 | $.00 |
| 3/24/2020 | 3/24/2020 | 3/1/2020 | Late Charge Waiver | | 0 | 0 | $201.73 | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | $.00 | ($65,073.23) | $201.73 | $1,707.36 | $.00 |
| 3/31/2020 | 3/31/2020 | 5/1/2015 | Legal Fee Assessment | | 1 | 0 | ($247.50) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | $.00 | ($65,073.23) | $.00 | $1,707.36 | $.00 |
| 4/7/2020 | 4/7/2020 | 5/1/2015 | Forced Place Insur Disbursement | FPI Escrow | 12 | 67077 | ($1,016.77) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | ($1,016.77) | ($66,090.00) | $.00 | $1,707.36 | $.00 |
| 4/17/2020 | 4/17/2020 | 4/1/2020 | Late Charge Assessment | | 0 | 0 | ($201.73) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | $.00 | ($66,090.00) | ($201.73) | $1,909.09 | $.00 |
| 4/17/2020 | 4/17/2020 | 4/1/2020 | Late Charge Waiver | | 0 | 0 | $201.73 | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | $.00 | ($66,090.00) | $201.73 | $1,707.36 | $.00 |
| 5/4/2020 | 5/4/2020 | 5/1/2015 | Forced Place Insur Disbursement | FPI Escrow | 12 | 70293 | ($1,016.77) | $.00 | $810,821.05 | $.00 | $.00 | $2,512.60 | ($1,016.77) | ($67,106.77) | $.00 | $1,707.36 | $.00 |
| 5/6/2020 | 5/7/2020 | 5/1/2015 | Unapplied Payment Reversal | 45-PA | 0 | 70853 | ($2,512.60) | $.00 | $810,821.05 | $.00 | ($2,512.60) | $.00 | $.00 | ($67,106.77) | $.00 | $1,707.36 | $.00 |
| 5/6/2020 | 5/7/2020 | 5/1/2015 | Late Charge Payment | 45-PA | 0 | 70853 | $1,707.36 | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($67,106.77) | $1,707.36 | $.00 | $.00 |
| 5/6/2020 | 5/7/2020 | 5/1/2015 | 3rd PPS Corp Advance Payment | 45-PA | 212 | 70853 | $342.95 | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($67,106.77) | $.00 | $.00 | $.00 |
| 5/6/2020 | 5/7/2020 | 5/1/2015 | Prior Serv Late Chrg Payment | 45-PA | 95 | 70853 | $1.43 | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($67,106.77) | $.00 | $.00 | $.00 |
| 5/6/2020 | 5/7/2020 | 5/1/2015 | Legal Fee Payment | 45-PA | 1 | 70853 | $460.86 | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($67,106.77) | $.00 | $.00 | $.00 |
| 5/17/2020 | 5/19/2020 | 5/1/2020 | Late Charge Assessment | | 0 | 0 | ($201.73) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($67,106.77) | ($201.73) | $201.73 | $.00 |
| 5/19/2020 | 5/19/2020 | 5/1/2020 | Late Charge Waiver | | 0 | 0 | $201.73 | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($67,106.77) | $201.73 | $.00 | $.00 |

## Loan History - General

| | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/2/2020 | 6/2/2020 | 5/1/2015 | Forced Place Insur Disbursement | FPI Escrow | 12 | 73843 | ($1,016.77) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | ($1,016.77) | ($68,123.54) | $.00 | $.00 | $.00 |
| 6/17/2020 | 6/17/2020 | 6/1/2020 | Late Charge Assessment | | 0 | 0 | ($201.73) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($68,123.54) | ($201.73) | $201.73 | $.00 |
| 6/17/2020 | 6/17/2020 | 6/1/2020 | Late Charge Waiver | | 0 | 0 | $201.73 | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($68,123.54) | $201.73 | $.00 | $.00 |
| 7/3/2020 | 7/3/2020 | 5/1/2015 | Forced Place Insur Disbursement | FPI Escrow | 12 | 77635 | ($1,016.77) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | ($1,016.77) | ($69,140.31) | $.00 | $.00 | $.00 |
| 7/17/2020 | 7/17/2020 | 7/1/2020 | Late Charge Assessment | | 0 | 0 | ($201.73) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($69,140.31) | ($201.73) | $201.73 | $.00 |
| 7/17/2020 | 7/17/2020 | 7/1/2020 | Late Charge Waiver | | 0 | 0 | $201.73 | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($69,140.31) | $201.73 | $.00 | $.00 |
| 8/5/2020 | 8/5/2020 | 5/1/2015 | Forced Place Insur Disbursement | FPI Escrow | 12 | 81625 | ($1,016.77) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | ($1,016.77) | ($70,157.08) | $.00 | $.00 | $.00 |
| 8/17/2020 | 8/18/2020 | 8/1/2020 | Late Charge Assessment | | 0 | 0 | ($201.73) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($70,157.08) | ($201.73) | $201.73 | $.00 |
| 8/18/2020 | 8/18/2020 | 8/1/2020 | Late Charge Waiver | | 0 | 0 | $201.73 | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($70,157.08) | $201.73 | $.00 | $.00 |
| 8/26/2020 | 8/26/2020 | 5/1/2015 | Escrow Only Payment | 43-FPI Refund | 0 | 84360 | $12,404.64 | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $12,404.64 | ($57,752.44) | $.00 | $.00 | $.00 |
| 9/17/2020 | 9/17/2020 | 9/1/2020 | Late Charge Assessment | | 0 | 0 | ($201.73) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($57,752.44) | ($201.73) | $201.73 | $.00 |
| 9/17/2020 | 9/17/2020 | 9/1/2020 | Late Charge Waiver | | 0 | 0 | $201.73 | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($57,752.44) | $201.73 | $.00 | $.00 |
| 10/17/2020 | 10/17/2020 | 10/1/2020 | Late Charge Assessment | | 0 | 0 | ($201.73) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($57,752.44) | ($201.73) | $201.73 | $.00 |
| 10/17/2020 | 10/17/2020 | 10/1/2020 | Late Charge Waiver | | 0 | 0 | $201.73 | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($57,752.44) | $201.73 | $.00 | $.00 |
| 11/17/2020 | 11/17/2020 | 11/1/2020 | Late Charge Assessment | | 0 | 0 | ($172.61) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($57,752.44) | ($172.61) | $172.61 | $.00 |
| 11/17/2020 | 11/17/2020 | 11/1/2020 | Late Charge Waiver | | 0 | 0 | $172.61 | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($57,752.44) | $172.61 | $.00 | $.00 |
| 11/18/2020 | 11/18/2020 | 12/10/2020 | County Tax Disbursement | property taxes MR 11/18 | 30 | 93714 | ($5,345.38) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | ($5,345.38) | ($63,097.82) | $.00 | $.00 | $.00 |
| 12/17/2020 | 12/17/2020 | 12/1/2020 | Late Charge Assessment | | 0 | 0 | ($172.61) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($63,097.82) | ($172.61) | $172.61 | $.00 |
| 12/17/2020 | 12/17/2020 | 12/1/2020 | Late Charge Waiver | | 0 | 0 | $172.61 | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($63,097.82) | $172.61 | $.00 | $.00 |
| 1/17/2021 | 1/19/2021 | 1/1/2021 | Late Charge Assessment | | 0 | 0 | ($172.61) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($63,097.82) | ($172.61) | $172.61 | $.00 |
| 1/19/2021 | 1/19/2021 | 1/1/2021 | Late Charge Waiver | | 0 | 0 | $172.61 | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($63,097.82) | $172.61 | $.00 | $.00 |

## Loan History - General

| | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/17/2021 | 2/17/2021 | 2/1/2021 | Late Charge Assessment | | 0 | 0 | ($172.61) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($63,097.82) | ($172.61) | $172.61 | $.00 |
| 2/17/2021 | 2/17/2021 | 2/1/2021 | Late Charge Waiver | | 0 | 0 | $172.61 | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($63,097.82) | $172.61 | $.00 | $.00 |
| 3/5/2021 | 3/5/2021 | 5/1/2015 | Foreclosure Expense Assessment | | 235 | 0 | ($510.00) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($63,097.82) | $.00 | $.00 | $.00 |
| 3/17/2021 | 3/17/2021 | 3/1/2021 | Late Charge Assessment | | 0 | 0 | ($172.61) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($63,097.82) | ($172.61) | $172.61 | $.00 |
| 3/17/2021 | 3/17/2021 | 3/1/2021 | Late Charge Waiver | | 0 | 0 | $172.61 | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($63,097.82) | $172.61 | $.00 | $.00 |
| 3/18/2021 | 3/18/2021 | 4/10/2021 | County Tax Disbursement | Property Taxes 3/18/21 SB | 30 | 108478 | ($5,345.38) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | ($5,345.38) | ($68,443.20) | $.00 | $.00 | $.00 |
| 4/17/2021 | 4/17/2021 | 4/1/2021 | Late Charge Assessment | | 0 | 0 | ($172.61) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($68,443.20) | ($172.61) | $172.61 | $.00 |
| 4/17/2021 | 4/17/2021 | 4/1/2021 | Late Charge Waiver | | 0 | 0 | $172.61 | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($68,443.20) | $172.61 | $.00 | $.00 |
| 4/29/2021 | 4/29/2021 | 5/1/2015 | Foreclosure Expense Assessment | | 235 | 0 | ($2,072.04) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($68,443.20) | $.00 | $.00 | $.00 |
| 5/17/2021 | 5/18/2021 | 5/1/2021 | Late Charge Assessment | | 0 | 0 | ($172.61) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($68,443.20) | ($172.61) | $172.61 | $.00 |
| 5/18/2021 | 5/18/2021 | 5/1/2021 | Late Charge Waiver | | 0 | 0 | $172.61 | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($68,443.20) | $172.61 | $.00 | $.00 |
| 6/17/2021 | 6/17/2021 | 6/1/2021 | Late Charge Assessment | | 0 | 0 | ($172.61) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($68,443.20) | ($172.61) | $172.61 | $.00 |
| 6/17/2021 | 6/17/2021 | 6/1/2021 | Late Charge Waiver | | 0 | 0 | $172.61 | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($68,443.20) | $172.61 | $.00 | $.00 |
| 7/17/2021 | 7/17/2021 | 7/1/2021 | Late Charge Assessment | | 0 | 0 | ($172.61) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($68,443.20) | ($172.61) | $172.61 | $.00 |
| 7/17/2021 | 7/17/2021 | 7/1/2021 | Late Charge Waiver | | 0 | 0 | $172.61 | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($68,443.20) | $172.61 | $.00 | $.00 |
| 8/17/2021 | 8/17/2021 | 8/1/2021 | Late Charge Assessment | | 0 | 0 | ($172.61) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($68,443.20) | ($172.61) | $172.61 | $.00 |
| 8/17/2021 | 8/17/2021 | 8/1/2021 | Late Charge Waiver | | 0 | 0 | $172.61 | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($68,443.20) | $172.61 | $.00 | $.00 |
| 9/7/2021 | 9/7/2021 | 5/1/2015 | Foreclosure Expense Assessment | | 235 | 0 | ($993.32) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($68,443.20) | $.00 | $.00 | $.00 |
| 9/17/2021 | 9/17/2021 | 9/1/2021 | Late Charge Assessment | | 0 | 0 | ($172.61) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($68,443.20) | ($172.61) | $172.61 | $.00 |
| 10/8/2021 | 10/8/2021 | 5/1/2015 | Legal Expense Recov Assessment | | 232 | 0 | ($3,276.75) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($68,443.20) | $.00 | $172.61 | $.00 |
| 10/17/2021 | 10/19/2021 | 10/1/2021 | Late Charge Assessment | | 0 | 0 | ($172.61) | $.00 | $810,821.05 | $.00 | $.00 | $.00 | $.00 | ($68,443.20) | ($172.61) | $345.22 | $.00 |

# EXHIBIT "6"



Stephen L. Vagnini
Monterey County Recorder
Recorded at the request of
**Filer**

RGRISELDA
12/10/2014
15:24:43

DOCUMENT: **2014061869**



| Titles: 1/ Pages: 3 | |
|---|---|
| Fees.... | 47.00 |
| Taxes... | |
| Other... | 6.00 |
| AMT PAID | $53.00 |

**PREPARED BY:**
Dr. Michael T. Noble
19024 Fieldstone Court
Salinas, California 93908
Phone: ███████████
Email: ███████████

**Mailing Address of Grantee:**
Brenda M. Noble
11623-39A AVE
EDMONTON ALBERTA T6J0N9
CANADA
Phone ███████████
Email: ███████████

Documentary Transfer Tax $ __0__

..... .. .. ... .. .. ... uniformly conveyed.
...... .. .... .. .. ...... _x Joint to me via Divorce_ ..ons and
........ .. ...... ...... of sale.

Signature of declarant or agent — firm name

### QUITCLAIM DEED

STATE OF CALIFORNIA    )

                     )      KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF MONTEREY   )

That **BRENDA M. NOBLE**, of Edmonton, Alberta, Canada, for and in consideration of Ten Dollars ($10.00), has released and quitclaimed, and by these presents does release quitclaim unto **DR. MICHAEL T. NOBLE & Mountain Investments** of the County of Monterey, State of California, all of Grantor's title without warranty to that lot, tract or parcel of land situated in MONTEREY County, State of CALIFORNIA, to wit:

**PARCEL 1:**
Lot 57, as said Lot is shown and designated on that map entitled, "Tract No. 1283, Las Palmas Ranch, Phase II, Unit VI" for record September 29, 1997 in Volume 19, Cities and Towns, at Page 47, Monterey County Records, as amended by a Certificate of Correction Recorded October 13, 1999 in Series Number 9976738 and also amended by a Certificate of Correction Recorded January 14, 2000 in Series Number 2000003082.

**PARCEL 2:**
A non-exclusive easement on, over, under and across the "Master Common Area" as defined in the Master Declaration of Covenants, Conditions, and

1



Restrictions for Las Palmas Ranch No. 2, recorded September 26, 1995 in Reel 3279, Page 1412, Official Records of Monterey County, California, as amended and restated by document recorded December 27, 1995, in Reel 3316, Page 1339, Official Records of Monterey County, California ("Master Declaration"), for the purposes described in the Master Declaration and subject to the terms, provisions and reservations of the Master Declaration. This Easement is appurtenant to Parcel 1 above.

WITNESS the hand of said Grantor this 14th day of November, A.D. 2014

*Brenda Noble*

**Brenda M. Noble**

PROVINCE of ALBERTA )

        :SS.

COUNTY OF STRATHCONA )

On this 21st day of Nov., 2014 before me Andrew Rice, a Notary Public, personally appeared **BRENDA MARIE NOBLE**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the Province of Alberta that the foregoing paragraph is true and correct.

**WITNESS** my hand official seal.

ANDREW S. RICE
Barrister & Solicitor

2

CANADA                        )

PROVINCE OF ALBERTA     )

CITY OF CALGARY         )  ss:

CONSULATE GENERAL OF THE )

UNITED STATES OF AMERICA  )

I certify that the official named below, whose true signature and official seal are, respectively, subscribed and affixed to the annexed document, was, on this day, empowered to act in the official capacity designated in the annexed document, to which faith and credit are due.

<u>Andrew S. Rice</u>
(Name of the Notary)

_____
(Signature of Consular Officer)



<u>Eva E. Holm</u>
(Typed name of Consular Officer)

<u>Vice Consul of the United States of America</u>
(Title of Consular Officer)

<u>November 28, 2014</u>
(Date)

# END OF DOCUMENT

# EXHIBIT "7"

# 2021004953

Stephen L. Vagnini
Monterey County Clerk-Recorder
01/25/2021 08:07 AM
Recorded at the request of:
MICHAEL T NOBLE

Titles: 1      Pages: 2

Fees: $100.00
Taxes: $0.00
AMT PAID: $100.00

Recording requested by:    )
Chris B. Turner            )
SCOTT L. SOELBERG, P.C.    )
837 East 1200 South        )
Orem, Utah 84097           )
                           )
Mail tax statements to:    )
Mountain Investments, LLC  )
19024 Fieldstone Court     )
Salinas, California 93908  )
                           )
When recorded mail to:     )
same as tax statement above.  ) Space above for recorder's use.

## QUITCLAIM DEED

The undersigned declare that the documentary transfer tax is $0.00 since the Grantors and Grantee in this conveyance are comprised of the same parties who continue to hold the same proportional interests in the property: R & T 11925(d).

Unincorporated area _____        City of _Salinas_____

Re APN: __139-392-018-000_____

MICHAEL T. NOBLE, **Grantor**, of Salinas, County of Monterey, State of California, hereby QUITCLAIMS to MONTEREY MTN PROPERTY MANAGEMENT, LLC, **Grantee**, for the sum of TEN DOLLARS ($10.00) and other valuable consideration, all of his rights, title and interest in and to the following described real property in the County of Monterey, State of California, subject to the encumbrances owed thereon, to-wit:

PARCEL 1:
Lot 57, as said Lot is shown and designated on that map entitled, "Tract No. 1283, Las Palmas Ranch, Phase II, Unit VI", filed for record September 29, 1997 in Volume 19, Cities and Towns, at Page 47, Monterey County Records, as amended by a Certificate of Correction Recorded October 13, 1999 in Series Number 9976738 and also amended by a Certificate of Correction Recorded January 14, 2000 in Series Number 2000003082.

PARCEL II:
A non-exclusive easement on, over, under and across the "Master Common Area" as defined in the Master Declaration of Covenants, Conditions and Restrictions for Las Palmas Ranch No. 2, recorded September 26, 1995 in Reel 3279, Page 1412, Official Records of Monterey County, California, as amended and restated by document recorded December 27, 1995, in Reel 3316, Page 1339, Official Records of Monterey County, California ("Master Declaration"), for the purposes described in the Master Declaration and subject to the terms, provisions and reservations of the Master Declaration. This Easement is appurtenant to Parcel 1 above and shall

become effective as to each Lot within the Master Common Area upon the later to occur of (i) the recordation of this Deed or (ii) the conveyance of record of the lot within the Master Common Area to the Master Association.

PARCEL III:
A non-exclusive easement, on, over, under and across the "Common Area" as defined in the Declaration of Covenants, Conditions and Restrictions for Fieldcrest at Las Palmas Ranch, recorded September 26, 1995, in Reel 3279, Page 1447, Official Records of Monterey County, California ("Fieldcrest Declaration"), for the purposes described in the Fieldcrest Declaration and subject to the terms, provisions and reservations of the Fieldcrest Declaration. This Easement is appurtenant to Parcel I above and shall become effective as to each Lot within the Common Area upon the later to occur of (i) the recordation of this Deed or (ii) the conveyance of record of the Lot within the Common Area to the Association.

WITNESS the hand of said Grantor this _22_ day of _January_ , 2021.

_Michael J Noble_

MICHAEL T. NOBLE

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

STATE OF CALIFORNIA        )
                                           :ss
COUNTY OF ~~NEVADA~~ _Monterey_  )

On _Jan. 23, 2021_ , before me, _Michael J. Mendenhall_, a Notary Public, personally appeared MICHAEL T. NOBLE, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that **he/she/they** executed the same in **his/her/their** authorized capacity(ies), and that by **his/her/their** signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Michael J Mendenhall_
Notary Public

MICHAEL J. MENDENHALL
COMM. # 2324564
NOTARY PUBLIC-CALIFORNIA
MONTEREY COUNTY
MY COMM. EXP. APR. 12, 2024

Notary Public Seal

1  Erica Loftis, Esq. (SBN 259286)
2  Adam P. Thursby, Esq. (SBN 318465)
   GHIDOTTI | BERGER LLP
3  1920 Old Tustin Ave.
   Santa Ana, CA 92705
4  Ph: (949) 427-2010
   Fax: (949) 427-2732
5  bknotifications@ghidottiberger.com

6
   Attorney for Secured Creditor
7  U.S. Bank Trust National Association as Trustee of Bungalow Series III Trust

8
                    UNITED STATES BANKRUPTCY COURT
9
                    NORTHERN DISTRICT OF CALIFORNIA
10
                          SAN JOSE DIVISION
11

12  In Re:                                )    CASE NO.: 21-51127 MEH
13                                         )
    Monterey Mountain Property Management, LLC, )   CHAPTER 11
14                                         )
                                           )
15       Debtor.                           )    **CERTIFICATE OF SERVICE FOR**
16                                         )    **MOTION FOR RELIEF FROM**
                                           )    **AUTOMATIC STAY**
17                                         )
18                                         )    Judge: M. Elaine Hammond
19                                         )
20                                         )
21                                         )
22                                         )
23                                         )
24                                         )
25                                         )
26                                         )
27  _____   )
28

                        **CERTIFICATE OF SERVICE**

I am employed in the County of Orange, State of California.  I am over the age of eighteen and not a party to the within action.  My business address is 1920 Old Tustin Ave., Santa, Ana, CA 92705.  On November 30, 2021, I served the foregoing documents described as

- **Motion For Relief and Memorandum of Points and Authorities in Support of Motion For Relief From Automatic Stay**
- **Relief From Stay Summary Sheet**
- **Notice of Hearing on Motion for Relief from Automatic Stay**
- **Declaration in Support of Motion for Relief from Automatic Stay**
- **Exhibits in Support of Motion for Relief from Automatic Stay**

on the following individuals by depositing true copies thereof in the United States first class mail at Santa Ana, California, enclosed in a sealed envelope, with postage page and/or by NEF addressed as follows:

BY NEF:

COUNSEL FOR DEBTORS
Arasto Farsad                          farsadecf@gmail.com

US TRUSTEE
US Trustee                             USTPRegion17.SJ.ECF@usdoj.gov

COUNSEL FOR US TRUSTEE
Suhey Ramirez                          suhey.ramirez@usdoj.gov

BY FIRST CLASS MAIL:

COUNSEL FOR DEBTOR
Arasto Farsad
Farsad Law Office, P.C.
1625 The Alameda, Suite 525
San Jose, CA 95126

DEBTOR
Monterey Mountain Property Management, LLC
675 Spencer Street
Monterey, CA 93940-1337

NON-FILING BORROWERS

Michael T. Noble
675 Spencer Street
Monterey, CA 93940

Brenda Noble
675 Spencer Street
Monterey, CA 93940

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/s/ Brandy Carroll
Brandy Carroll